The opinion of the court was delivered by
Duncan, J.
The defendant in error, the plaintiff below, made out a clbar title to No. 1028, in the Fifth Donation District, and the question was as to its locality. The cause was complicated by a mass of evidence, and has been perplexed by the. course of tire argument^ but when the- matters excepted to are reduced to *391 their simple elements, it presents two questions for examination, on the admissibility of evidence., neither of them attended with difficulty. The first, the admission of the record of an ejectment and judgment by one Martin, against this John Smith, and the recovery of another tract of land on which Smith lived, and claimed as lot No. 1028. The paper book does not state the order of the evidence with accuracy, nor the state of the cause on trial when the evidence was received; a matter frequently of importance in judging of the propriety of admitting or rejecting evidence, and, in this case, is the point on which the the exception depended. By the paper book it would appear, that Smith, after giving in evidence his title to No. 1028, and having produced several witnesses, the object of whose testimony was to establish, that the tract in possession of Moore was No. 1028, offered the record of the ejectment. But this record shows, that when that record was first offered as evidence in chief, it was rejected, and then properly.rejected by the court. But on the cross-examination afterwards of Mian Dunn, one of the plaintiff’s witnesses, evidence was given by him of Smith’s residence on the land, which Martin recovered from him, and that he continued in possession, claiming that tract as No. 1028;' and the witness testified, that, as far as he knew, he had lived there ever since. Then he understood he was the tenant of Martin. This was evidence for some purpose; and that purpose was sufficiently stated by the plaintiff below. It had been rejected as evidence in chief, but-the defendant, in his cross-examination of Dunn, rendered it proper to explain what had become of his possession of Martin’s tract; that he had by mistake seated himself on it, as No. 1028, which, on the trial of Martin’s ejectment, it turned out not to be, and that Martin’s having established his right to it, and shown the mistake of Smith,.and recovered it by due course of law; for had not this been explained, and it could be explained in no other way than this, it would.have been open to argument, and the cross-examination, as to this fact, was with that view; thatá'miíA still held the possession under the same right that he sets up against Moore. Indeed the argument of the plaintiff in error admits this. The objection is not that it. was not evidence for any purpose, but tliat it was not stated, and does not appear for what purpose it was offered. Now, it is plainly and explicitly stated. No one who examines the record can doubt, that it was not offered as evidence of title, but to explain a matter which Dunn had stated on his cross-examination by the. plaintiff in error, and coming out in the cross-examination as new matter. It was the evidence of the plaintiff in error, and therefore it became necessary for Smith to give the whole history of that possession and of its recovery by him. This is very like the case of Stewart v. Richardson, 4 Binn. 198. There, the. conveyance was not evidence of title, but it tended to confirm the evidence of a witness whose credit had been severely impeached. *392 It was offered generally, without stating for what purpose or what was intended by it. There it was decided, that it was not necessary that the object and design of the evidence should be stated by the party offering it, unless it is required by the opposite party. If the object is neither stated nor required to be stated by the party, and the evidence is rejected generally, its admissibility for any purpose is sufficient to impugn the decision of the court. If this evidence had been offered to prove a particular right, it was not evidence of that right, and the court reject it as not being evidence of that right, — not evidence for that purpose, though it might be evidence for another purpose. Then, according to this principle, which has been followed up by a series of decisions in this court, and by other courts in the' United States, it would have been properly rejected, and for the best reason, if it was offered for a purpose expressed, and to prove a particular right or fact, and it is rejected as evidence of that, and the party conceives it is evidence for any other purpose, he may, after this rejection, offer it for that other purpose; for, if this was not the law, the judgments of courts of Common Pleas might be reversed for errors never committed by them, and a party have his_.judgment reversed, on a ground which he never did take and never would have taken. The. judgment in Hassinger v. Spayd, decided lately at Sunhury, was affirmed on these principles. There, the papers offered and rejected were no evidence for the purpose for which they offered, though they were evidence for another purpose, and even evidence of title; and it was held, they were properly rejected bjr the court. If is as clear as light, that it was offered for a particular purpose. As general evidence, it had been before rejected. The renewal of the offer immediately after Dunn’s examination; the nature of the evidence given by him, and the admission of the defendant, that on the trial Smith defended claiming under the patent for lot No. 1028, and the restricted admission of it by the court; the qualification of the court when it was received as evidence for some purpose; the court saying, they would state to the jury the purpose for which it was received, all prove this. The plaintiff in error has failed in supporting his exception to this evidence.
The second bill of exceptions respects the admission of the declarations and conversation of James Herrington. This decision of the Court of Common Pleas is attempted to be maintained on two grounds: First, that Moore and Herrington were joint owners when these conversations took place; and, secondly, that they were in the presence of Moore. Of all evidence, loose, hasty conversation is entitled to the least weight. I do not know, that, in the present case, the conversation could have weighed more than a feather. Yet if might have made some impression on the jury, and it ought not to have been i-eceived. So far as any judgment can be formed of the state in which Moore stood with Herring-ton at that time, from the evidence it would appear that Moore *393 had bought this part of the land from Herrington, It was his exclusive possession of the part sold to him by Herrington. They were neither joint tenants, nor tenants in common. Whatever right Moore had, was a several right, in which Herrington had no interest or concern. After Herrington parted with his title, no conversation he might hold, to suit some other particular purpose, or answer one view in a dispute with others, could affect Moore. But it is said, Moore was along as a chain carrier, on a view in the case between Herrington and Thompson and Bowman. In this controversy Moore had no interest. It was not a conversation held with him or a declaration made to him. There is no evidence that he stood so near the parties who held the conversation, that he must of necessity have heard it. He was employed in a business which required all his attention. The reason why this species of evidence is given, is because the party by his silence is supposed to acquiesce. Qui tacet, consentiré videtur. That presupposes a declaration or proposition made to him, which he is bound either to deny or to admit. A man carrying a chain to ascertain some boundary1, with which he has no concern, cannot be presumed to attend to ali the rough and boisterous talk between two impetuous litigants. Nor is he to throw himself into the dispute, by contradicting either of the parties on such an occasion. It might be deemed impertinence in him to contradict them, unless some appeal was made to him. But there was no proof that he either did or could hear these conversations. The only evidence is, that he was present at the view; that he was on the land, the tract; and he was acting as a chain carrier. This is quite too loose. Two men, at this rate, might talk a third put of his whole estate, with a witness! Nothing can be more dangerous than this kind of evidence. It should always be received with caution, and never ought to be, unless the evidence is of direct declarations of that kind, which naturally calls for contradiction; some assertion made to the man, with respect to his right, which, by his silence, he acquiesces in. The judgment is, for this reason, reversed, and a venire de novo awarded.
-Judgment reversed, and a venire facias de novo awardéd.