| Carter and wife *vs.* Buchannon. | 3 | 513 |
|---|---|---|
| | 105 | 351 |
| | 3 | 513 |
| | 122 | 117 |

No. 68.—JOHN W. CARTER, and Wife, plaintiffs in error, *vs.* GEORGE F. BUCHANNON, defendant in error.

[1.] *Res gestæ* are the circumstances, acts and declarations which grow out of the main fact, are contemporaneous with it, and serve to illustrate its character.

[2.] Declarations of a party, to be admitted as part of the *res gestæ*, must be at the time of the transaction they are intended to explain; must be calculated to unfold its nature and quality, and must harmonize with it.

[3.] Declarations of the donor, made on the evening of the same day on which the alleged gift was made, but after it was made, going to show that there was a gift, and the manner of it, are not admissible as parts of the *res gestæ*.

[4.] The admissions of a third· person, from whom title emanates which affects his interest, made *whilst in possession of property, or before he parts with title to it*, are admissible in evidence against all who claim under him.

[5.] Evidence of possession of a slave, derived from the donor, in the father of a young child to whom it is alleged it was given, is not of itself proof of a gift, but is admissible as proving possession.

[6.] Evidence that there was a gift from A to B, without stating the manner and form of the gift, not admissible to prove a gift.

[7.] Statements made by a third person in the presence of a party, and not contradicted, are admitted with great circumspection and caution, but only when the party adducing the evidence first proves, that the person to whom the statements were made, assented to them either expressly or by his silence.

[8.] When A is in possession of property, and being about to make his will, and is in consultation with B about it, inquires of B, "*what shall I do with Jenny?*" (the property in possession,) and B answers, "*you can do nothing with Jenny, because I have given her to your daughter Esther;*" held that both the question and the answer should be admitted, that the jury may judge of the intention of A in propounding the question.

Trover for a slave.    Tried before Judge SAYRE.    In Wilkes Superior Court.    September Term, 1847.

Upon the trial below, the plaintiffs attempted to prove a gift of Jenny, the mother of Jerry the slave in dispute, to Mrs. Carter, when she was quite a child, by her grandfather Jacob Bull.

In the progress of the trial, the plaintiffs proved possession of Jerry in the defendant for several years, and that he purchased him from the administrators of Jones Kendrick, who was the father of Mrs. Carter, and the son-in-law of Jacob Bull.    It was further proven that Jerry was the son of Jenny, and was born in the possession of said Kendrick, and continued in his possession until his death, he exercising acts of ownership over him all the time. Jerry's value, and the value of his hire, and some other facts not going to prove title, and therefore immaterial, were proven.

The plaintiffs then tendered in evidence the depositions of William Bull, to prove " that he heard Jacob Bull say he had made a gift of the negro woman Jenny to his grand-daughter, Esther Caroline," (Mrs. Carter;) and at the same time they also tendered in evidence the depositions of Mildred T. Bull, to prove " that she had heard Jacob Bull, in his life time, and on the evening of the day on which he gave Jenny to his grand-daughter, say, and show how, he made the gift, by placing the hand of the girl Jenny in the hand of his grand-daughter Esther Caroline Kendrick, (now Mrs. Carter,) and tell her that was her negro." These depositions, the plaintiffs insisted, were competent to show a gift from Jacob Bull to his grand-daughter, of Jenny, the mother of the slave in dispute. They were demurred to on the part of the defendant, and rejected by the Court below. To which the counsel for the plaintiffs excepted.

The plaintiffs then proved that Jenny, the mother of Jerry, was originally the property of Jacob Bull; that she was raised and owned by him until she went into the possession of Kendrick; and having proven these additional facts, they again tendered in evidence the said depositions of William and Mildred T. Bull, which were again demurred to and rejected.

To which the plaintiffs excepted; insisting that, having proven that defendant bought from Kendrick, and that he held under Bull, his admissions showing title in them, and therefore out of the defendant, were legal evidence; that said admissions bound him and those who were in privity with him.

The plaintiffs' in error then proved by the depositions of the same witnesses, that " on the same day of the gift and delivery of the said girl Jenny to Mrs. Carter, then Miss Kendrick, they all went home together and remained in possession of Jones Kendrick as one family," This testimony was introduced for the purpose of proving the gift. The Court below admitted it for the purpose of showing possession of the negro girl, in Jones Kendrick, but held that it was not good to show a gift to Mrs. Carter. To which the plaintiffs excepted, insisting that as Mrs. Carter was then a child living with the father, his possession was for her use, and the delivery to him was a delivery to her.

The plaintiffs then introduced in evidence the depositions of Judith Young, to the effect " that she saw a gift made by Jacob Bull to Esther Caroline Kendrick, of a negro girl named Jenny. The gift was made in Mr. Kendrick's house in the year 1814.

Jones Kendrick asked Jacob Bull (when he, Kendrick, was going to make a will, a little previous to going into the army) what he would do with a negro girl named Jenny? Mr. Bull told him, said Kendrick, that he could not do any thing with Jenny, for he had given her to Esther, his daughter."

This testimony was objected to, and the Court below rejected the first part of it, because the witness had not explained in what way or by what means the gift was made. To which the plaintiffs excepted.

The latter part of this evidence, to wit, the question put by Kendrick to Bull, and his reply, was also rejected by the Court below, because it did not disclose whether Kendrick assented to the statement of Bull, or was silent. To which the plaintiffs excepted.

Upon these several exceptions, the error complained of was assigned.

ANDREWS & GARTRELL, for the plaintiffs in error.

A. H. & L. STEPHENS, and F. H. CONE, for the defendant in error.

Mr. ANDREWS submitted the following brief of points and authorities:

The possession of Kendrick was the possession of Bull, until the gift was completed. That the declarations proven were a part of the *res gestæ*. That even if the gift were complete, it was competent at any time after to confirm it, and make it more manifest to the jury by proving the acknowledgment of plaintiff's title by the donor, unless the defendant, or those under whom he claimed, had in the mean time acquired title from Bull, which such declarations would tend to defeat. That as long as such declarations were against the interest of Bull, they would be competent to be proven by plaintiffs.

The Court erred in excluding Bull's declarations in the presence of Kendrick, on the ground that they did not appear to be uncontradicted by Kendrick, because no answer was required, from the nature of the conversation, from Kendrick. The plaintiffs proposed only, to prove a question by Kendrick, and the answer by Bull.

Authorities cited. 2 *Phil. Ev.* 257; 1 *Johns. R.* 140; 1 *Kelly R.* 595; *Dud. R.* 72, 75; 2 *Phil Ev.* 661, 662; 1 *Harper R.* 374;

1 *Bail.* 113, 116; 1 *Johns. R.* 342; 2 *Phil. Ev.* 658; *Georgia Decisions, part 2nd,* 168; 2 *McCord Ch. R.* 131; 2 *Nott & McCord R.* 93; 1 *Bail. R.* 322.

Mr. Cone, for the defendant in error, made the following points:

1. That when slaves pass from the possession of a father-in-law, to a son-in-law, by presumption of law it is a gift from the former to the latter, and therefore the declarations of the father-in-law, after he has parted with the possession of the property, are not competent evidence to defeat the title of the son-in-law. 1 *Bay R.* 232; 2 *Nott & McCord R.* 92; 4 *McCord R.* 228, 251; 1 *Hill (S. C.) R.* 194; *Harper R.* 375; 1 *Bail.* 115; *Rice Eq.* 174; 1 *Stewart R.* 24; 6 *Ala. R.* 259.

2. What is asserted in the presence of a party, and to which he makes no reply, is received as evidence against him; but in order to make such evidence competent, it must be proved as an affirmative fact that the party made no reply, but remained silent. 3 *Phil. Ev.* 192, *and cases there cited;* 5 *Harris & Johns. R.* 117, 119; 14 *id.* 388, 393.

*By the Court.*—Nisbet, J., delivering the opinion.

This action of trover for a slave named Jerry, was brought by the plaintiffs in error, Carter and wife, against George F. Buchannon. The plaintiffs attempted to show title by proving the gift to Mrs. Carter, from Jacob Bull, her grand-father, when she was quite a child, of Jenny, the mother of Jerry. In the progress of the trial, the plaintiffs proved possession of Jerry by the defendant for several years; that he purchased him from the administrators of Jones Kendrick, who was the father of Mrs. Carter and the son-in-law of Jacob Bull; that Jerry was the son of Jenny, and was born in the possession of Jones Kendrick and continued in his possession until his death, he exercising acts of ownership over him all the time. The plaintiffs also proved the value of Jerry, and of his hire, and some other facts which are immaterial, as they did not go to make out their title. *At this point in the case,* the plaintiffs tendered in evidence the depositions of William Bull, to prove "that he heard Jacob Bull say he had made a gift of the negro woman Jenny to his grand-daughter, Esther Caroline," (Mrs. Carter.) At the same time, they tendered in evidence the depositions of Mildred T. Bull, to prove "that she had heard Jacob Bull in

his life-time, and on the evening of the day on which he gave Jenny to his grand-daughter, say and show how he made the gift, by placing the hand of the girl Jenny in the hand of his grand-daughter Esther Caroline Kendrick, (now Mrs. Carter,) and tell her that was her negro." These depositions, the plaintiffs insisted, were competent to show a gift from Jacob Bull to his grand-daughter, of Jenny, the mother of the slave in question. Being demurred to, they were rejected.

The plaintiffs in error contend that in the rejection of [1.] these depositions, the Court erred, insisting that the sayings of Jacob Bull are legal testimony to prove the gift, and thus make out their title, because they are part of the *res gestæ*. We dissent from this opinion of the plaintiff's counsel, and hold with the presiding judge. What is meant by the *res gestæ?* The idea of the *res gestæ* presupposes a *main fact*, or principal transaction; for example, the delivery into possession of a slave, might be the main fact in an alleged gift. With this preliminary remark, I answer, that the *res gestæ*, mean the circumstances, facts and declarations which grow out of the main fact, are contemporaneous with it, and serve to illustrate its character. I do not claim that this definition is perfect, for I know that the *res gestæ* are different in different cases; no definition could be framed so comprehensive as to embrace all cases, hence it is left to the sound discretion of the courts what they shall admit to the jury along with the main fact, as parts of the *res gestæ*. But perhaps this definition embraces as nearly all that is meant in legal parlance by that phrase, as any other which can be drawn from the books. One peculiarity of the main fact or transaction ought to be noted, and that is, that it is not necessarily limited as to time; it may be a length of time in the action. The time of course depends upon the character of the transaction; it is, however, well settled, that the acts of the party, or the facts or circumstances or declarations which are sought to be admitted in evidence, are not admissible unless they grow out of the principal transaction, illustrate its character, and are contemporary with it. 1 *Greenl. Ev. secs.* 108, 109, 110; 2 *Bing. R.* 104; 9 *id.* 349, 352; 4 *Pick. R.* 372; 11 *id.* 309; 21 *Howell State Trials*, 542; 1 *Starkie Ev.* 62, 63; 4 *Mass. R.* 702; 12 *id.* 439; 14 *id.* 245; 5 *Johns. R.* 412; 2 *Cow. & Hill Phil. Ev.* note 444.

In the present case, it is the *declarations* of the party said [2.] to have made the gift, that are to be considered. Declarations, as

parts of *res gestæ*, made at the time of the transaction, are regarded as verbal acts, indicating a present purpose and intention, and are therefore admitted in proof like any other material facts.   5 *T. R.* 512; 2 *Bing. R.* 99; 1 *M. & M.* 338; 5 *Greenl. R.* 266; 1 *B. & Ad.* 135; 1 *Metc. R.* 242; 1 *Greenl. Ev. sec.* 108.

An indispensable characteristic of declarations is, that they must be made at the time of the act done which they are supposed to characterize; and further, they must be calculated to unfold the nature and quality of the facts they are intended to explain, and so to harmonize with them, as obviously to constitute one transaction.   3 *Conn. R.* 250; *Story on Bailments, sec.* 339; 14 *S. & R.* 275; 11 *Wend. R.* 25; 2 *Ad. & El.* 80; 1 *Greenl. Ev. sec.* 108, *note.* To apply the test of these principles to these depositions.   In the first place, no *main fact* in this case was proven; there was no transaction to illustrate before the Court; there was no evidence of a gift of Jenny, or of a delivery, or any thing which looked like a gift.   These depositions were offered to prove the main fact; and for this reason, if there were none other, I do not perceive how they could be considered as *res gestæ*.   But admitting that there was proven, or could have been afterwards proven, the delivery of the negro girl Jenny, to Mrs. Carter, or any other fact which might be considered as a *main fact,* then it must be conceded that these declarations of Jacob Bull would seem to grow out of it, would serve to characterize it, would be expressive of the motive or object of the donor, and would harmonize with it.   Thus far the requirements of the rules laid down are [3.] fulfilled.   But one indispensable thing is wanting; they were not contemporary with the fact; they were *not* made at the time of the alleged gift.   According to the testimony, they were made in the evening of the day when the gift was made—on the same day, but after the time of the gift.   If in this case there was a gift at all, it was a parol gift, perfected by manual tradition.   The action of the transaction must have required but a brief period. The declarations were *after* the transaction, and were not therefore contemporaneous with it.   The declarations were a *narrative of a past occurrence,* and are not a part of the *res gestæ* of that occurrence.   *Greenl. Ev. vol.* 1, *sec.* 110; 2 *Pothier on Obl. by Evans,* 248, 249 ; *Cas. Temp. Hardw.* 267 ; 1 *Adol. & Ell.* 733.   We are clear that these depositions were not parts of the *res gestæ.*

[4.]    The plaintiffs then proved that the woman Jenny was originally the property of Jacob Bull; was raised by him, and by him

Carter and wife *vs.* Buchannon.

owned until she went into the possession of Kendrick; and having proven these additional facts, they again tendered in evidence the depositions of William and Mildred T. Bull, which were again rejected. The plaintiffs maintain, that having proven that the defendant bought of Kendrick, and that he held under Jacob Bull, Jacob Bull's admissions showing title in them, and therefore out of the defendant, is legal evidence; that his admissions bind him and those who are in privity with him.

It is true that the admissions of a person from whom the title to property in question emanates, made against his interest, and at a time when he is in possession, or before he has parted with the title, may be proven in a suit to which he is not a party, as original evidence. It is also true, that such admissions bind himself and also his privies; for example, admissions made under such circumstances by an ancestor, will bind his heir, by a vendor his vendee, by a donor his donee; the effect of the admissions extends to all who claim under him; such admissions bind him, because made against himself they are in conflict with his *interest*; they are held to be true, and are one of the exceptions to the general rule that hearsay evidence is inadmissible, because no man can be presumed voluntarily to assert a falsehood which will operate against his interest. A slight acquaintance with human nature attests the soundness of this reasoning. Privies are bound by them, because of the identity of their interest with that of the declarant. A purchaser, for example, who buys property encumbered with such declarations, takes it *cum onere;* the vendor can not convey a better interest in it than he himself has; the interest bought, is the interest sold; if it is already lessened or weakened by admissions, it must needs pass to the purchaser thus diminished or impaired.

This kind of evidence is admitted with caution; observe the conditions of its admissibility. The admissions must be *against the interest* of the declarant, and at *a time when they will so operate;* they must be made whilst he is in possession, or before he has parted with the title; if made after the title has passed from him, they do not affect his interest, for then he has no interest in the property. In such a case the reason of the rule does not apply. A privy is not bound by declarations made after a sale; there is no interest in the declarant with which his can be identified. If when he purchases the property, it is unencumbered, it can not be encumbered by subsequent admissions of his vendor. Nothing

would be more unjust or more ruinous, than to permit titles to property to be affected by the hearsay statements of those who had once owned or possessed it, after they had parted with all interest in it. Hence, before this kind of testimony can be admitted, the foundation for its admission must be laid by proof that the admissions were made at a time when the declarant had an interest in the property.

In this case, so far from this being done, the testimony is, that Jacob Bull's admissions were made *after* the alleged gift to Mrs. Carter; and further, it appears that they were made after the posession of the slave had passed from him to Kendrick; for the testimony is, that the same day the gift was made to Esther Caroline, the negro went home with Kendrick. The admissions were made in the evening of the same day. Whether this last inference be a fair one, from the evidence, may be questionable. It is, however, immaterial, for in our judgment, it lay upon the plaintiffs to prove affirmatively that the declarations were made at a time when the declarant had an interest; so that we do not think the Court erred in excluding this testimony a second time. 1 *Greenl. Ev. secs.* 189, 181, 190, 149; 10 *East. R.* 109; 2 *Strange R.* 1129; 2 *Burrow R.* 1071, 1072; 1 *Crompt. & Mees.* 423, 424; 2 *Jac. & W. R.* 489; 3 *Bing. n. c.* 408, 420; 2 *Russ.* 63, 68; 1 *Greenl. Ev. sec.* 171; 1 *Hill R.* 612; 2 *Cow. & Hill Phil. Ev. note* 481; 5 *B. & Ad. R.* 223; 2 *Metc. R.* 263; 1 *Taunt. R.* 141; 1 *Esp. R.* 458; 9 *Bing. R.* 41; 2 *T. R.* 53; 1 *Camp. R.* 367; 9 *Greenl. R.* 83; 1 *Fairf. R.* 244; 6 *Greenl. R.* 416; 5 *Pick. R.* 2; 10 *Ad. & Ell. R.* 106; 2 *McCord R.* 243, 457; 1 *Ad. & Ell. R.* 740, 733.

[5.] The depositions of the same witnesses were now offered to prove the facts contained in the following words, as recited in the bill of exceptions, to wit: " The same day of the *gift and delivery of the said girl Jenny to Mrs. Carter, then Miss Kendrick, they all went home together and remained in possession of Jones Kendrick as one family*." The presiding judge admitted the evidence for the purpose of showing possession of the negro girl in Jones Kendrick, but held that it was not good to show a gift to Mrs. Carter. The plaintiffs in error claim that this was an error; they say, that inasmuch as Mrs. Carter was a child, living with Kendrick her father, his possession was for her use, and that the delivery to him was a delivery to her. This is all very well; but when they go further, and say that this evidence proves a gift, they are decidedly in error. The Court did right to permit the evidence to.

go to the jury, to prove the fact it purports to prove, to wit, the possession of the slave Jenny, in Kendrick. The jury were the judges of what effect it would have in making out a gift to Mrs. Carter; they were to judge whether Kendrick's possession was in his own right, or as trustee or agent for his daughter; whether this was or not an advance to Kendrick from his father-in-law; in short, how far it went to prove a gift to Mrs. Kendrick. It would have outraged all legal propriety for the Court to have ruled, that this testimony of itself, proved a gift to Mrs. Carter. We find no error in this record on this ground.

The only remaining question in this record for our review, [6.] originated also in a demurrer to evidence. The plaintiffs' offered the depositions of one Judith Young, to the effect " that she saw a gift made by Jacob Bull to Esther Caroline Kendrick, of a negro girl named Jenny. The gift was made in Mr. Kendrick's house, in the year 1814. Jones Kendrick asked Jacob Bull, (when he, Kendrick, was going to make a will, a little previous to going into the army,) what he would do with a negro girl named Jenny ? Mr. Bull told him, Kendrick, that he could not do any thing with Jenny, for he had given her to Esther, his daughter." The Court rejected the first part of this testimony, because the witness does not explain in what way or by what means the gift was made; and very properly. As to what constitutes a parol gift, is a question of law, arising upon the facts. The Court administers the law and the jury find the facts. To make out a gift, therefore, facts must be proven. This witness testifies to no act or fact, but states that a gift was made. It is the *opinion* of the witness, upon her recollection of the transaction, that it was a gift. If this testimony were admissible, then the witness would take the place of both Court and jury; she would find the facts, and she, too, apply the law. If there had been proof already before the jury of a gift, and this witness had identified her testimony as to time and place with such proof, perhaps the question would be different. Here there was no proof of that character.

The latter part of this evidence, to wit, the question put by [7.] Kendrick to Bull, and his reply, was rejected, because the testimony does not disclose whether Kendrick assented to the statement of Bull or was silent. The plaintiffs insist that this testimony was admissible upon the principle, *qui tacet, consentire videtur.* The defendant admits the principle, but replies, that the testimony is not admissible until the party seeking to use it shows assent by

express words, or by silence. A distinction is to be taken in the application of this maxim, between declarations made by a party interested, and by a stranger. What one party says to another, without contradiction, is admissible; but what a stranger says to a party, may, although uncontradicted, not always be evidence; it may be impertinent, and best rebuked by silence. If, however, there is a reply, that is evidence. Thus, what a magistrate, before whom an assault and battery was investigated, said to the parties, was held inadmissible in a subsequent civil action for the same assault.

Best, Chief. Justice, in *Child* vs. *Grace*, 2 *Car. & Pay. R.* 193, upon this subject, holds the following language : " What was said by the defendant to the plaintiff may be evidence, but not what was said by a third person; or if that which was said drew any answer from the plaintiff, then that makes it evidence, otherwise it is not. Really, it is most dangerous evidence. I never will receive such evidence unless, as my Lord Kenyon used to say, the twelve judges in the House of Lords tell me that I must."

" Nothing," says Duncan, C. J., " can be more dangerous than this kind of evidence. It should always be received with caution, and never ought to be received at all, unless the evidence is of direct declarations of that kind which naturally calls for contradiction—some assertion made to a party with regard to his right, which by his silence he acquiesces in." 14 *Serg. & Rawle* 393.

If the declarations are those of a third person, the circumstances must be such as called on him to interfere, or at least such as would not render it impertinent in him to do so. The admissibility of all such evidence depends upon the assent of the person to whom the statements are made. Assent is an acquiescence of the mind in the truth of the statement. This is manifested by proof of express admissions, or by proof of silence. The party adducing the testimony, must show the express assent or silence of the party addressed. In the absence of such proof, it does not appear but that he made the most earnest protest, or the most vehement disclaimer. 1 *Greenl. Ev. secs.* 199, 200; 14 *Serg. & Rawle* 393 ; 2 *Car. & Pay. R.* 193 ; 3 *Stark. R.* 33 ; 1 *M. & M. R.* 336 ; 3 *Car. & Pay. R.* 103; *Tait Ev.* 293; 1 *Ad. & El. R.* 162, 165 ; 2 *Nott & McCord R.* 301; 2 *Har. & Johns. R.* 117, 119 ; 2 *Cow. & Hill Phil. Ev. note.* 191 ; 1 *Starkie Ev.* 64.

Now, if the evidence we are now considering falls under [8.] these rules, it was properly rejected. But does it? We have not here a volunteer statement made by Bull to Kendrick, in rela-

tion to his right in the negro girl, but a volunteer question, propounded by Kendrick to Bull, and Bull's reply. Bull's reply cannot be considered in the light of a statement made by him to Kendrick, because it is elicited by the previous inquiry of Kendrick. The circumstances of the case are also to be considered; Kendrick was in possession of the negro woman, he was about to make his will, and the parties were in consultation about his will. Whether Kendrick meant by the question, "what shall I do with the negro girl Jenny?" to elicit the advice of Bull as to what particular disposition he should make of her as his own property, or whether he meant to disclaim property in her, or to admit that he held her as the trustee or agent of Mrs. Carter, or to recognise in Bull the right himself to control her, are all questions of intention. Of these, the jury are the judges; and we think the question and the answer ought to have been submitted to them, and that it was their province to determine what effect it had, if any, upon the plaintiffs' or the defendant's title to the property in litigation. Upon this point alone, this case must be remanded.

Judgment reversed.