## CITIZENS GASLIGHT AND HEATING CO.

### v.

### NORA O'BRIEN, Adm'x, etc.

1. EXPERT TESTIMONY.—A witness is not incompetent to testify as an expert by reason of the fact that his special knowledge of the particular subject of inquiry has not been derived from experience or actual observation but from the reading and study of standard authorities.

2. INSTRUCTIONS.—It was not error in this case for the court to refuse a large number of appellant's forty-two instructions. A few plain statements of the law governing the case would suffice.

3. SAME.—An instruction which in substance tells the jury that if deceased did or refused to do certain specified things it was negligence, is erroneous, invading as it does the province of the jury.

APPEAL from the Circuit Court of McLean county; the Hon. O. T. REEVES, Judge, presiding. Opinion filed February 25, 1886.

Messrs. KERRICK, LUCAS & SPENCER, for appellant.

Mr. JOHN T. LILLARD, for appellee.

CONGER, J.   This case was formerly before this court and is reported in 15 Bradwell, 400, where a general statement of the facts necessary to an understanding of the controversy will be found, and we shall only allude to the points made in the present record urged upon our attention as ground for reversal, and for convenience will notice them in the order presented in appellant's brief.

It is insisted that the court admitted improper testimony, first, in permitting the witness Clark to testify that a certain stack or escape pipe, as shown on a plan in evidence, was not in place at the time of the accident.   This was proper to sustain the second count of the declaration, which charged there was no suitable stack or ventilating flue to convey poisonous gases out of the building, and also to correct any misapprehension in the jury arising from the plan or diagram in evidence, which represented such stack or pipe at the place inquired about.   But aside from these reasons, any evidence tending to show the true condition of the building and machinery at the time of the accident would be admissible.

Objection is made to the following question to Dr. Mason and his answer thereto.

Q.   If you have had any experience with this kind of gas, tell what it is.

A.   The gas that comes from a hard coal burner, as I have observed in sitting around in a room where this gas is eliminated, and there is no other evidence of any other gas, it produces stupor and languor, of which after thorough ventilation and a reasonable length of time for a purifying of the air, you will be relieved; those are the effects I have had in my own experience.

While the answer is objectionable, we are unable to see how it could have injured appellant, for, in the language of appellant's counsel: "Ordinary men know just as well as the witness that if the product of burning coal or any other substance escapes into an unventilated room, languor and stupor and other disagreeable effects will be produced upon the occupants."

In other words it simply stated a proposition admitted to be true by all parties to the controversy, not questioned or denied, and therefore could have done no harm.

It is next insisted that Professor Seymour was not qualified to testify as an expert, because his knowledge of the effect upon a human being of breathing poisonous gases had not been gained by actual experience and observation.

He was a teacher of natural sciences in the Normal University; had been investigating and teaching the science of chemistry for eighteen years; had lately made it a specialty and had had occasion in the study and teaching of that science to investigate the gases produced by the combustion of hard coal.

Under these circumstances we think he was qualified to testify as an expert.

"A witness is not incompetent to testify as an expert by reason of the fact that his special knowledge of the particular subject of inquiry has not been derived from experience or actual observation, but from the reading and study of standard authorities." Rogers' Expert Testimony, Sec. 20.

It is also urged that the court erred in refusing to allow appellant to show that the gas-making apparatus was at the time of the accident under the control of Granger & Co., and had not been turned over by them to appellant.

This evidence was given to the jury. Although an objection was sustained, the record fails to show it was excluded from their consideration, and we are left to presume that, notwithstanding the remarks of the court, the jury remained in possession of such fact.

But we think the evidence was not proper. Its purpose, as claimed by appellant, was to relieve its superintendent, Burns, from the duty of knowing whether the generator or furnace doors were open, or partially so, at the time of, or just before the accident, such facts, as claimed, having a bearing upon the probability of poisonous gases being in the upper part of the room where O'Brien was sent.

Burns was superintendent of appellant's gas works, and was, we presume, possessed of the skill and experience to properly perform the duties of his position.

It was his duty, before he sent O'Brien where he met his death, to use reasonable diligence to ascertain all existing facts and circumstances, which would enable one so skilled and experienced to determine whether his order to O'Brien was a reasonable one and could be executed with reasonable safety. And if the condition of the furnace doors was one of the facts upon which to base a conclusion, his duty to know it could not be changed or affected by showing he was not in the immediate control of the furnace.

If after the order was given to O'Brien some sudden change in the operation of the machinery had taken place by order of the servants of Granger & Co., which Burns could neither control nor reasonably anticipate, and which aided in causing the accident, there would be great force in appellant's position.

Appellee's second instruction would be somewhat clearer if the word "without" was repeated before the words "any fault" or "negligence," but we think any ordinary juror would read the instruction as though it was there. The word, "but" would also be understood as referring to the words following it, in which case the meaning would be clear.

Appellant complains that a large number of its instructions were refused. The action of the trial court in this respect was not only proper, but highly commendable.

Forty-two instructions, covering thirteen pages of the printed abstract, were presented to the court by appellant.

To launch such a mass of legal conundrums upon a court, which can never enlighten a jury, but are generally drawn with the real, if not avowed purpose of getting error into the record, and entangling the court in some technical contradiction that may be used, in a higher court, is a perversion of the law of instructing jurors. A few plain statements of the law governing the case would suffice. If the court in the hurry of trial did not sift this unreasonable number of instructions as carefully as appellant desired, we do not feel called upon to interfere unless some palpable error has occurred, clearly affecting the justice of the case.

The fifth refused instruction of appellant was as follows, and was properly refused.

"The court instructs the jury that if they believe from the evidence that Mr. Byerly was the foreman of Patrick O'Brien, and that Mr. Byerly told O'Brien not to go the way the evidence shows he did go, but to take a long ladder, and if the jury further believe from the evidence that Patrick O'Brien refused to obey Byerly, and in consequence of such refusal came to his death, then the court instructs the jury that such refusal of Patrick O'Brien did materially contribute to causing the injury, and in such case the jury should find for the defendant." What did, or did not materially contribute to cause the injury was a question of fact for the jury, and not for the court to assert as matter of law. It was equivalent to telling them, if deceased did or refused to do certain specified things it was negligence, which is in the teeth of the former opinion of this court in the present case, as well as numerous ones of the Supreme Court. Myers v. I. & St. L. R. W. Co., 113 Ill. 386, and cases there cited.

The sixth also invades the province of the jury. It asserts if O'Brien refused to obey Byerly, and in consequence came to his death, there could be no recovery. That disobedience of an order might be such negligence as would be fatal to a recovery is true, but that it necessarily produces such a result is not the law. It was a question of fact for the jury whether under the circumstances it was negligence, and if so whether slight or otherwise.

The same objection applies to the 9th, 25th and 30th, and they were therefore properly refused.

The last point relied upon is, that there is no merit in the case as presented to the jury. Without entering into the case in detail, we think the jury were warranted in finding that O'Brien's negligence, if it can be regarded as such at all, was slight, and that the other propositions as laid down by this court in the former opinion, were fully sustained, viz. : "First, that the deceased met his death by reason of poisonous gases at the place where Burns had sent him to work; secondly, that Burns was guilty of negligence in not detecting their presence."

Neither do we regard the damages as excessive. The value of O'Brien's life to his family is not to be calculated by any

exact rule, but should be left largely to the practical judg-
ment and common sense of a jury; and when their judgment
is not influenced by passion or prejudice their conclusion
should not in such cases ordinarily be disturbed.

We think there has been a fair trial, and that justice has
been done; and the judgment of the circuit court will be
affirmed.

Affirmed.