## JAMES H. WILSON v. PENNA. R. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 1 OF PHILADELPHIA COUNTY.

Argued January 7, 1890—Decided January 20, 1890.

(*a*) In an action against a railroad company to recover damages for personal injuries to the plaintiff, about ten years old at the time, there was testimony that the accident occurred at a public crossing about 400 feet from a sharp curve in the track; that the hat of plaintiff's sister had blown upon the track, and after looking and listening, and neither seeing nor hearing an approaching train, he had followed to get it.

(*b*) Witnesses for the plaintiff testified that no bell was rung, or whistle sounded. The trainmen of defendant company, however, testified that the bell was rung and the whistle blown, and that the breaks were thrown on with full power before the boy was struck, as he was stooping with his back to the train in the act of lifting up the hat of his sister:

1. In such case, taking into view the time, place and circumstances of the injury complained of, and the tender years of the boy, the case was clearly for the jury on all the evidence before them, and it was not error to refuse to direct the jury to return a verdict in favor of the defendant.

2. There being evidence that at the time of the trial, more than three years after the accident, the plaintiff was suffering from pains in his head, it was not error to charge that he had a right to claim compensation for the injury, " and if you are satisfied that it is of a permanent nature of course that is also to be considered."

Before STERRETT, GREEN, CLARK, WILLIAMS, MCCOLLUM and MITCHELL, JJ.

No. 289 January Term 1889, Sup. Ct.; court below No. 352 June Term 1886, C. P. No. 1.

On June 28, 1886, James H. Wilson, Jr., by his father and next friend James H. Wilson, brought case against the Pennsylvania Railroad Company to recover damages for personal injuries.

At the trial on October 2, 1888, the plaintiff, a boy thirteen years of age, described the accident, which had occurred on August 24, 1885, as follows:

"I went to take a walk with my aunt, and my sister's hat blew off and then I looked up and down the track and there was a freight train going past, and I waited until that got past, and I looked up and down the track and listened. Q. Looked up and down for what? A. To see if any train was coming. Q. What occurred? A. I steppped on the track. Q. Did you see any? A. No, sir. Q. Or hear any? A. No, sir. Q. What did you do then? A. I stepped upon the track to get my sister's hat, and I don't know anything after that, I was knocked senseless. Q. Where did you next find yourself after you stepped on the track to get your sister's hat? A. I was knocked senseless."

Other witnesses for the plaintiff testified that they did not hear any bell or whistle sounded by the train which ran over the plaintiff. The freight train referred to by the plaintiff was moving in a direction opposite to the passenger train which struck him, and two tracks intervened between the track upon which it was moving and the track of the passenger train. About 400 feet from the crossing, in the direction from which the passenger train was moving, was a sharp curve. Other facts appear in the charge of the court below.

At the close of the testimony, the court, BIDDLE, J., charged the jury:

The negligence complained of in this case is, that at this Fuller's lane crossing, where this child was, there was no bell rung or no warning given of the approach of this train. That the little boy himself testifies to. He testifies he looked up and down, saw nothing, and heard neither bell nor whistle. That, I understood, was also the testimony of Miss Ross and

Charge of Court below.

Mrs. Alman, the persons who were in the immediate vicinity. They all testified they heard nothing.

As I understand the learned counsel for the plaintiff, he does not go so far as to say in this case that there was no bell rung or warning given. His contention is, that although this danger signal may have been given, it was given at so late a time that it was impossible to be of any avail to save the person for whose benefit the notice was given. The trains at the time were running, one one direction and one the other, almost covering each other. The whole of the crew of that freight train who have been called, the engineer, the conductor, the brakemen, the fireman, and the flagman, testified that their attention was called to this matter by hearing suddenly this danger signal, which consists of a series of toots, different from the other indications of stop, and that their attention was called to it by that, and that they first heard this when this passenger train was a thousand feet distant; that is, beyond the prior stopping place. They all unite upon that testimony. To the same effect is the testimony of the persons, the engineer and brakemen, and the others, who constituted the crew of the passenger engine. They testified to precisely the same facts. The engineer, Mr. Seery, stated that he was three hundred feet on the other side of Pennypack station when he first commenced to blow his whistle.

It is a question, therefore, to be determined, as to which of these witnesses or what set of facts you believe to have been established at this time. If there was no notice, of course that comes within the category of negligence, because this was a crossing, and one which was constantly in use and a great deal traveled. The defendant does not deny that it was proper to give notice. The ordinary notice which they would have given, if they had seen no one, was replaced by the danger notice. It would be immaterial for what purpose the bell was rung, if it was rung all the time for this thousand feet distance, and if the engine tooted, whether it was an ordinary signal which they were giving, or an extraordinary signal; it was, in either case, a notice for a reasonable distance before the approach to these people.

That is the rule of law as it affects the main question of the case. There is also, as in all these cases, another rule of law

Charge of Court below.

which is somewhat involved, which is, that if the negligence of the party who brings the suit contributed to the injury he is not allowed to recover. The law does not undertake to distinguish which of two people is the more in the wrong. If you are satisfied that the action of the child produced this injury in consequence of his negligence, that would debar him from the right of recovery.

His negligence consists, according to the argument of the defendant here, in the fact that he could plainly see this train; that it was so evident, in its coming upon him, that if he could see and did not see it, or would not see it, that made no difference; if he was so plainly in sight that any person of reasonable intelligence, even a child of ten years of age, had sufficient intelligence to see that this was coming right upon him, and did not get out of the way, of course the defendant would not be responsible.

If this child was playing upon this railroad and loitering about there and amusing himself on the railroad, he would then be a trespasser, and the company in that event would not be liable, unless they wilfully ran him down. Of course, as I had occasion to say before, nobody contends, or nobody ought to contend, that because you are a trespasser on the railroad that the engineer of the train has a right to run you down. There exists no such right as that, of course. The engineer, when he sees a person on the track, has a right to suppose that when he sounds his whistle and rings his bell that person will get out of the way. That is the first impulse, of course, which strikes any man running a train of cars. These crossings are frequent, vehicles are flying upon them, and it is their duty, the moment they see anything like obstruction, to give notice they are coming.

As the engineer testified here, he did not put on the whole force of his brakes the moment he saw something in the way; he first resorted to blowing his whistle and ringing his bell, supposing that the obstacle would be removed, as I suppose it does get out of the way ninety-nine times out of a hundred, and his rule is not to throw down the whole power of the brakes until he finds that the obstacle remains where it is, and has not moved off. He contends that is what he did here; that when he first blew his whistle he saw there was something

Charge of Court below.

there stooping down, and supposed when the whistle was blown violently that the person or object, or whatever it was, would get off, and it was only when he found it was remaining there that then he threw the whole power of his brakes on, but he was unable to stop his train until two cars and the engine had passed over the point where this child was.

The other question which you may probably have occasion to consider, if you believe that this negligence on the part of the company entitles this child to recover for the injury that he has received, is the question of compensation. Of course this corporation employs the best servants probably that it can, and takes all the care that it can to run these cars safely, and it is to their interest to run them safely and to do as little harm as possible to any man, woman, or child; and they are not to be punished vindictively for what happens to be done by the carelessness or errors of their servants. The limit of compensation which can be given is to compensate the person injured for the injury which he has sustained. He has a right to claim compensation for the pain which he has suffered and for the injury which he has received, and [if you are satisfied that it is of a permanent nature, of course that is also to be considered in arriving at what you think to be a fair and just compensation.] [5]

The defendant has presented the following points:

2. It appears from the evidence of the plaintiff's witnesses that from the point at which the plaintiff stopped before going on the track, a full view of the track could be obtained up to the beginning of the curve, and the beginning of the curve is fixed by the testimony of the civil engineer Beale, at four hundred feet from the crossing. Allowing the greatest known speed for the train which struck the plaintiff, the only conclusion of fact which can be drawn is, that the train was in sight when the plaintiff started to go on the track. Under the circumstances the verdict must be for the defendant.

Answer: I refuse that point.[1]

5. Under all the evidence the verdict must be for the defendant.

Answer: I refuse that point.[3]

6. If the jury believe that the plaintiff went upon the tracks of the defendant, while a train was passing over the crossing, and was struck while there by another train, he was guilty of contributory negligence and cannot recover in this case.

Opinion of the Court.

Answer: I refuse that point.[2]

7. The right of the public at a railway crossing is simply that of passing over its lines; and·if a person goes upon the crossing for any other purpose, he does so at his own risk, and in the absence of any wilful act by the railway company or its servants causing his injury, he cannot recover for any injuries he may suffer for so doing.

Answer: I refuse that point.[4]

The jury returned a verdict in favor of the plaintiff for $5,000. The plaintiff subsequently remitted so much of the verdict as was in excess of $2,500, and judgment was entered accordingly, whereupon the defendant took this appeal assigning for error:

1–4. The answers to defendant's point.[1 to 4]

5. The portion of the charge embraced in [   ][5]

*Mr. Geo. Tucker Bispham*, for the appellant:

Counsel cited Carroll v. Penna. R. Co., 12 W. N. 348; Moore v. Phila. etc. R. Co., 108 Pa. 349; Penna. R. Co., v. Bell, 122 Pa. 58; Morgan v. Camden etc. R. Co., 23 W. N. 189; Marland v. Railroad Co., 123 Pa. 487.

*Mr. A. S. L. Shields*, for the appellee.

Counsel cited: Phila. etc. R. Co. v. Troutman, 11 W. N. 453; Penna. R. Co. v. Kelly, 31 Pa. 372; Rauch v. Lloyd, 31 Pa. 358; Hestonville etc. R. Co. v. Gray, 3 W. N. 421; Crissey v. Railroad Co., 75 Pa. 83; Phila. City R. Co. v. Hazzard, 75 Pa. 367; Nagle v. Railroad Co., 88 Pa. 35.

PER CURIAM:

The very able and exhaustive argument of the learned counsel for defendant has not convinced us that there is any error in this record. In any view that can be reasonably taken of the evidence relating to the time, place, and circumstances of the injury complained of, the tender years of the injured child, etc., we think the case was clearly for the jury on all the evidence before them. It was fairly submitted, in a clear, comprehensive, and impartial charge, to which no just exception can be taken. The points recited in the first four specifications of

Syllabus.

error were rightly refused. In two of them, the court was requested to direct a verdict in favor of defendant. That could not have been done without ignoring questions of fact fairly presented by the evidence, and proper for the consideration of the jury.

The subject of complaint in the fifth and last specification is the following excerpt from the charge on the subject of damages, viz.: "And if you are satisfied that the injury is of a permanent nature, of course that is also to be considered in arriving at what you think to be a fair and just compensation." Considered in connection with what preceded it, this instruction was entirely proper; and, even severed, as it is, from the preceding clause of the sentence in which it is found, it cannot be regarded as erroneous. On the subject of damages, the charge is very guarded, and well calculated to keep the jury within proper bounds. Neither of the specifications of error is sustained.

Judgment affirmed.