---

DENVER & R. G. R. CO. v. ROLLER et al.

(Circuit Court of Appeals, Ninth Circuit.  February 5, 1900.)

No. 548.

1. FOREIGN CORPORATIONS—SERVICE—MANAGING OR BUSINESS AGENTS.

Under Code Civ. Proc. Cal. § 411, which provides for service on foreign corporations "doing business and having a managing or business agent, cashier or secretary within this state," by service upon such agent, cashier, or secretary, a railroad company incorporated in another state, which, although having no line of road within the state, maintains an office therein, designated by a sign as the freight and passenger office of its road, in charge of a general agent, who solicits passengers and freight to go over its line, and issues bills of lading for freight so shipped, is subject to suit in the state; and such agent is a managing or business agent, within the statute, on whom service may be made.

2. SAME—JURISDICTION OF STATE COURTS—TORT COMMITTED IN ANOTHER STATE.

A private corporation, like a natural person, may be sued in a transitory action in any state where service can legally be had upon it; and under Code Civ. Proc. Cal. § 411, which provides for service on foreign corporations doing business in the state, and section 395, which provides generally for the trial of suits against nonresidents, in any county which the plaintiff may designate in his complaint, a foreign railroad company which does business in the state, and has a managing agent therein, on whom service may legally be made, is subject to be sued in the courts of the state for a tort committed in another state.

3. CARRIERS—INJURY TO PASSENGER—COLLISION DUE TO NEGLIGENCE OF LESSEE.

A railroad company which leases to another company the right to use a portion of its track, over which it also runs its own trains, is liable to one of its passengers for an injury received in a collision due to the negligence of the employés of its lessee.

4. DAMAGES—PERSONAL INJURY—INJURIES RESULTING FROM FRIGHT.

In an action by a passenger against a railroad company to recover damages for injuries received in a collision, where there was evidence that plaintiff sustained serious bodily injuries, an instruction was proper, that if great fright was a reasonable and natural consequence of the circumstances in which the collision, with the ensuing wreckage, explosion, and conflagration, placed the plaintiff, and she was actually put in fright by those circumstances, and injury to her health was a reasonable and natural consequence of such fright, and was actually and proximately occasioned thereby, such injury was one for which damages were recoverable.

5. SAME—FUTURE PAIN AND SUFFERING—MENTAL SUFFERING.

Damages for a personal injury may properly include compensation for pain and suffering, both physical and mental, which has resulted in the past, and also, if the injury is shown to be permanent, for such as it is fair to believe will result in the future.

6. EVIDENCE—OPINIONS OF EXPERTS.

It is not error to permit a physician testifying as an expert to state his opinion as to the nature and cause of the bodily or mental condition

of a patient whom he has treated, derived from his own knowledge, his attendance, treatment, and examinations, although based in part on statements of the patient and complaints made at different times as to her pains and sufferings, and in the same connection to give his opinion as to whether the injuries are liable to be permanent.

7. SAME—HYPOTHETICAL QUESTIONS.

Where a hypothetical question to a witness testifying as an expert assumes the existence of a state of facts which the evidence directly, fairly, and reasonably tends to establish, and does not transcend the range of evidence, it is proper to permit it to be answered; and it is not necessary that the question should embrace all the facts in the case, or that they should be stated in the exact language of the witnesses.

8. CARRIERS—ACTION FOR INJURY TO PASSENGER IN COLLISION—EVIDENCE.

In an action by a passenger against a railroad company to recover damages for personal injuries received in a collision, where it was shown that plaintiff's nervous system was seriously affected after the accident, to enable the jury to determine whether she was frightened, or received a shock to which her condition might reasonably be attributed, evidence of all the facts and circumstances connected with the collision was admissible, such as that plaintiff jumped from the car in her nightdress, and stood upon an embankment for half an hour with other passengers, and that she saw the wrecked and burning cars, and saw and heard the wounded persons who were taken from the wreck. Such occurrences were a part of the res gestae, and the fact that they took place after the collision, or that plaintiff would not have been affected thereby had she remained in the car, did not render such evidence inadmissible, as she had the right to act upon the facts as they appeared to her at the time, and to use her senses, without being chargeable with contributory negligence.

9. EVIDENCE—PHOTOGRAPHS OF WRECK.

Photographs of the wrecks of railroad trains resulting from a collision, duly authenticated, are admissible in evidence in an action by a passenger to recover for injuries sustained in such collision, to illustrate the testimony of the witnesses.

10. DAMAGES—ACTION FOR INJURY TO PASSENGER—PLEADING SPECIAL DAMAGES.

In an action by a passenger against a railroad company to recover for injuries received in a collision, the aggravation of plaintiff's other injuries, due to fright or nervous shock incident to the collision and its attendant circumstances, is a direct and proximate effect of the collision, and need not be specially pleaded, but may be proved under a general allegation of bodily injury.

11. TRIAL—INSTRUCTIONS—REFUSAL OF REQUESTS.

Absolute perfection in instructions, so that they cannot be subjected to criticism, is not, and cannot reasonably be, required; but if the charge in its entirety fairly covers the legal propositions necessary to give instructions upon, and is substantially correct, it is not error for the court to refuse the instructions prepared by counsel, although they contain correct principles of law applicable to the case.

In Error to the Circuit Court of the United States for the Southern District of California.

Stephen M. White and Charles Monroe (Henry T. Rogers, of counsel), for plaintiff in error.

Lynn Helm, for defendants in error.

Before McKENNA, Circuit Justice, GILBERT, Circuit Judge, and HAWLEY, District Judge.

HAWLEY, District Judge. This action was instituted to recover damages for injuries received by Katherine A. Roller, one of the defendants in error, on September 9, 1897, while a passenger on the rail-

road of plaintiff in error, in a wreck which occurred between a freight train of the Colorado Midland Company and the regular passenger train of the plaintiff in error, a corporation organized under the laws of Colorado. The Colorado Midland Railroad Company owned and operated a railroad extending from Colorado Springs to New Castle. From New Castle to Rifle Creek, it operated its trains over that portion of the Denver & Rio Grande Railroad under a lease from that corporation. The trains of the respective roads were run by the employés of the respective companies under a time-card and rules for running trains prepared by the plaintiff in error. The record shows that the collision in question was caused by the negligence of the employés on the train of the Colorado Midland Railroad Company, and that the plaintiff in error and its employés were entirely free from any negligence in the matter. This action was brought in the superior court for Los Angeles county, state of California. Summons was issued and served upon W. J. Shotwell, who was the agent of the plaintiff in error at San Francisco, Cal., authorized to solicit and contract for passengers and freight to be carried from the state of California over other lines, and then over the railroad of the plaintiff in error in the state of Colorado, and the soliciting and contracting for passengers and freight to be carried from Eastern points through the state of Colorado to the state of California. The plaintiff in error does not own or operate any railroad in the state of California. The cause of action arose wholly within the state of Colorado. After the service of the summons the action was removed by the plaintiff in error from the state court to the circuit court of the United States for the Southern district of California. A motion was then made to quash the summons and dismiss the action upon the ground that neither the circuit court nor the superior court of the state had or have any jurisdiction of the subject-matter of the action, or of the person of the corporation. The court denied this motion, and its ruling thereon is made the basis of an assignment of error.

1. Did the court err in refusing to quash the summons? In determining this question it becomes our duty to look prayerfully to the statute of California under which the service of the summons was made. The Code of Civil Procedure (section 411), applicable to this case, provides that:

"The summons must be served by delivering a copy thereof, as follows: * * * (2) if the suit is against a foreign corporation, or a non-resident joint stock company or association, doing business and having a managing or business agent, cashier, or secretary within this state, to such agent, cashier, or secretary."

The plaintiff in error had an office in the city of San Francisco. Upon the windows of this office were signs which read, "Denver & Rio Grande R. R. Freight and Passenger Office." In a folder used and distributed by it for public information, giving the places of its offices and agents, is found the name of "W. J. Shotwell, Gen'l Agt. Pacific Coast, 314 California St., San Francisco." W. J. Shotwell, in his affidavit, says:

"That he is the general agent for the Denver & Rio Grande Railroad Company, a defendant herein, for the states of California and Nevada. * * *

That it is true that in his office in San Francisco he and the clerks under him solicit passengers and freight to go over the Denver & Rio Grande Railroad. * * * This affiant endeavors to induce shippers of freight to send it from San Francisco, so that during its route east it will go over the Denver & Rio Grande road. * * * That he issues a shipping receipt or bill of lading for the goods to be shipped from San Francisco. * * * That his only employment is for the purpose of soliciting freight and passenger business, and in influencing shippers and passengers to ship their freight and to travel over the Denver & Rio Grande road in the state of Colorado."

It thus clearly appears that the plaintiff in error had a business office in the city of San Francisco, state of California, and a managing agent in charge of that office, for the purpose of soliciting business in transporting passengers and freight over its road, situated in the state of Colorado. Is not this sufficient to authorize a valid service of summons upon the authorized agent of the corporation? It will be noticed that, if there is no cashier or secretary upon whom service can be made, the Code does not specify the extent of the agency required in order to bind a nonresident corporation by service of summons, except that the person must be a "managing or business agent." It is obvious that this does not mean that it must be the general managing agent of the corporation. The object of the service is attained when the agent served is of sufficient rank and character as to make it reasonably certain that the corporation will be notified of the service, and the statute is complied with if he be a managing or business agent in any specified line of business transacted by the corporation in the state where the service is made. That Shotwell, upon whom the service was made, was such an agent, is manifest from the facts above stated.

In Tuchband v. Railroad Co., 115 N. Y. 437, 440, 22 N. E. 361, the court said:

"When the corporation has an office in this state, where a substantial portion of its business is transacted by a person designated by itself as a general agent, although followed by words indicating some one department, it may safely be assumed that the object of the statute will be accomplished. It, of course, intends a 'managing agent' in this state, and, where a corporation created by the laws of any other state does business in this state, the person who, as its agent, does that business, should be considered its managing agent; and more especially should that be so where the foreign corporation has an office or place of business in this state, and when that office is in charge of that person, and he there acts for the corporation. He is there doing business for it, and so manages its business. Such person is, in every sense of the words used in the statute, 'a managing agent.'"

In Merchants' Mfg. Co. v. Grand Trunk Ry. Co. (C. C.) 13 Fed. 358, the court said:

"A corporation, although it cannot migrate beyond the limits of the sovereignty which has created it, may by comity exercise its franchise elsewhere. A foreign corporation can transact business here upon such conditions as may be imposed upon it by the laws of this state. It can be sued whenever the technical obstacles in the way of compelling its appearance do not exist. At common law, process must be served on its principal officer within the jurisdiction of the sovereignty where the corporate body exists. But it can waive this requirement, and consent to be served in a different manner, and when it does this it stands on the same footing with a natural person. When it avails itself of the privileges of doing business in a state whose laws authorize it to be sued there by service of process upon an agent, its assent to that mode of service is implied. Accordingly it has been re-

peatedly held that a foreign corporation consents to be amenable to suit by such mode of service as the laws of the state provide, when it invokes the comity of the state for the transaction of its affairs. Insurance Co. v. French, 18 How. 404, 15 L. Ed. 451; Railroad Co. v. Harris, 12 Wall. 81, 20 L. Ed. 354; Ex parte Schollenberger, 96 U. S. 369, 24 L. Ed. 853. It waives the right to object to the mode of service of process which the state laws authorize."

See, also, Railroad Co. v. Estill, 147 U. S. 591, 596, 606, 13 Sup. Ct. 444, 37 L. Ed. 292; Van Dresser v. Navigation Co. (C. C.) 48 Fed. 202; Norton v. Railroad Co. (C. C.) 61 Fed. 618; Palmer v. Herald Co. (C. C.) 70 Fed. 886; Foster v. Lumber Co., 5 S. D. 57, 68, 58 N. W. 9, 23 L. R. A. 490; Palmer v. Pennsylvania Co., 35 Hun, 369; McNichol v. Agency, 74 Mo. 457; Stone v. Insurance Co., 78 Mo. 655, 658.

2. Did the courts in California have jurisdiction of the subject-matter of this action? This question is dependent to a great extent upon the conclusions already reached as to the validity of the service of the summons. The Code of Civil Procedure of California, in treating of the place of trial of civil actions, specifies (1) certain civil actions that are to be tried in the county in which the subject of the action, or some part thereof, is situated; (2) of other actions, where the cause, or some part, arose in the county; (3) of the place of trial of actions against counties. Then comes section 395, as to the place of trial of other actions according to the residence of the parties. In this section we find that "if none of the defendants reside in the state * * * the same may be tried in any county which the plaintiff may designate in his complaint." It will be observed, by a careful reading of the statute, that actions of the nature and character of the one under consideration are not mentioned in the list of actions that must be tried where the subject of the action is situate, or where the cause of action arose. The contention of the plaintiff in error is that the statutes of California do not give jurisdiction, but simply provide in what county suits, over which the courts of California have jurisdiction, shall be brought, and how the service of summons may be made. Can this contention be sustained? There is no decision of the supreme court of California construing the various statutes we have cited with reference to the particular facts of this case. But in Thomas v. Mining Co., 65 Cal. 600, 602, 4 Pac. 641, the court had under consideration a motion for a change of the place of trial. The defendant was an English corporation. It had never designated a person upon whom service of process could be had, but the summons was served upon its managing agent. One of the questions presented was whether a foreign corporation doing business in California had a residence in any particular county, such as contemplated by the provisions of the Code of Civil Procedure relating to the place of trial; and in the course of the opinion the court said:

"A foreign corporation cannot do business here without subjecting itself to the jurisdiction of our courts, but it is not a necessary corollary that it is entitled to claim a 'residence' here. It cannot escape the consequences of an illegal act done by its agents, within the scope of the authority it has conferred upon them, by setting up an existence under a foreign government. People v. Central R. R. of New Jersey, 48 Barb. 478. It is liable to be sued here to the same extent as an individual or company incorporated under the

laws of this state. Austin v. Railroad Co., 25 N. J. Law, 383. It may be sued here, not because it resides here, but because it has chosen to do business here by its agents. Its home is in the country where alone it has its being. As it resides, if anywhere, out of the state, an action against it may be tried in any county designated by the plaintiff. Code Civ. Proc. § 395."

The general drift and tendency of judicial decisions, state and national, is in the direction of placing corporations upon the same plane as natural persons, in regard to the jurisdiction of suits by or against them. The statutes of the different states and of the United States have, as a general rule, been liberally construed for the purpose of sustaining this view, although the decisions of the state courts upon the precise point under discussion are not entirely harmonious. We are of opinion that the decided weight of authority and of reason is in favor of the jurisdiction of the state court over the present action, under the provisions of the statutes of California above cited, and upon the facts disclosed by the record.

In Railroad Co. v. Estill, supra, the facts were in all essential respects similar to the case in hand. There two suits at law were brought against the railroad company, which was incorporated under the laws of the state of New York, in the state court of Saline county, Mo., to recover damages for injuries by the railroad company, through negligence, to live cattle. The cattle were being transported from Massachusetts to Missouri. The damage occurred from a collision which took place in Ohio. The summons was served in St. Louis, Mo., on a city passenger agent of the railroad company in its business office there, who had charge of it at the time of the service. The company there, as here, appeared, and upon petition removed the actions to the circuit court of the United States, because of diverse citizenship, and thereafter in the circuit court moved to quash the writ of summons on the ground that it was void and conferred no jurisdiction over the railroad company. The circuit court overruled this motion. The supreme court, in considering the assignments of error based upon this ruling, following the decisions of the state court of Missouri, held that the state court acquired jurisdiction of the actions, under the provisions of subdivision 4 of section 3489 of the Revised Statutes of Missouri of 1879, and section 3481 of the same statutes. These sections are substantially the same as sections 395 and 411 of the Code of California, heretofore cited. This is a transitory action, and could be tried in any state where jurisdiction could be obtained by proper service upon the corporation.

In Curtis v. Bradford, 33 Wis. 190, 192, in proceedings against a garnishee upon a judgment obtained against a railway company, where, as here, it was claimed that the court neither had jurisdiction of the defendant, nor of the subject-matter of the action, the court said:

"It further appears that the principal suit was brought to recover for injuries done to the plaintiff's wife while attempting to get aboard the defendant's cars at a station in Michigan. It was doubtless an action sounding in tort, for an injury inflicted in another state, but still one transitory in its character, and triable by the courts of this state. This proposition is in accordance with reason, and is amply sustained by the authorities to which we are referred. * * * Those authorities establish the doctrine that courts of general juris-

diction entertain actions for personal injury, even where the act complained of was committed in another state."

In Railroad Co. v. Wallace, 50 Miss. 244, 248, the collision of the train of cars whereby Wallace, the plaintiff, was injured, occurred in the state of Louisiana. The suit was brought in the state court of Lawrence county, Miss. The supreme court said:

"The court had jurisdiction of the subject-matter of the suit, and, as there is no objection to the service of process by which the plaintiffs in error are brought into court, * * * the court had jurisdiction of the plaintiffs in error; and, upon well-settled principles, the court having jurisdiction of the subject-matter of the suit and of the defendants can entertain the suit and try the cause. Corporations are artificial persons, existing only in contemplation of law. They must dwell in the place of their creation, and cannot migrate to another state. But they are liable to be sued like natural persons in transitory actions, arising ex contractu or ex delicto, in any state where legal service of process can be had. * * * In transitory actions, foreign private corporations, like natural persons, may be sued anywhere where the court can obtain jurisdiction of the corporation, either by legal service of process, or its appearance by attorney."

In addition to the authorities heretofore cited, see Eingartner v. Steel Co., 94 Wis. 70, 74, 80, 68 N. W. 664, 34 L. R. A. 503; Ackerson v. Railway Co., 31 N. J. Law, 309; Steed v. Harvey (Utah) 54 Pac. 1011; Block v. Railroad Co. (C. C.) 21 Fed. 529.

In Railroad Co. v. Harris, 12 Wall. 65, 83, 20 L. Ed. 354, the facts were that Harris, while traveling as a passenger on the Baltimore & Ohio Railroad, was injured in a collision in the state of Virginia. He brought an action for damages against the railroad company in the supreme court of the District of Columbia. It will be seen, by reading the opinion in that case, that the cause of action arose neither in the state of Maryland, where the railroad company was incorporated, nor in the District of Columbia, where the action was brought, but in the state of Virginia. The decision, in effect, declares that a corporation of one state, lawfully doing business in another state, and legally served with summons in the state where the suit is brought, is subject to the jurisdiction of the court in that state. This decision has been universally followed in the United States courts.

In Stewart v. Railroad Co., 168 U. S. 445, 448, 18 Sup. Ct. 106, 42 L. Ed. 539, the court said:

"An action to recover damages for a tort is not local, but transitory, and can, as a general rule, be maintained wherever the wrongdoer can be found. Dennick v. Railroad Co., 103 U. S. 11, 26 L. Ed. 439. It may well be that, where a purely statutory right is created, the special remedy provided by the statute for the enforcement of that right must be pursued; but, where the statute simply takes away a common-law obstacle to a recovery for an admitted tort, it would seem not unreasonable to hold that an action for that tort can be maintained in any state in which that common-law obstacle has been removed."

In Steamship Co. v. Kane, 170 U. S. 100, 112, 18 Sup. Ct. 530, 42 L. Ed. 969, the court, among other things, said:

"The present action was brought by a citizen and resident of the state of New Jersey, in a circuit court of the United States held within the state of New York, against a foreign corporation doing business in the latter state. It was for a personal tort committed abroad, such as would have been actionable if committed in the state of New York, or elsewhere in this country, and

an action for which might be maintained in any circuit court of the United States which acquired jurisdiction of the defendant."

Numerous authorities might be cited to the same effect, but the above is deemed sufficient. The court did not err in refusing the motion of the plaintiff in error.

3. This brings us to the consideration of the questions raised at the trial of the case.

Did the court err in instructing the jury as follows:

"There is no controversy but that the pleadings and proofs show that a collision between the train of the defendant and that of the receiver of the Colorado Midland Railway Company occurred at the time, place, and in the manner alleged in the complaint, and that said collision resulted from the negligence of the employés of the receiver of the latter company, and that plaintiffs at the time of said collision were passengers on the said train of the defendant. The pleadings and proofs further show, beyond controversy, that the defendant owned the railroad track at the place of collision, and that at the time of the collision the receiver of the Colorado Midland Railway Company, under a lease from the defendant, was using said track jointly with the defendant. Upon the foregoing facts, as admitted and proved, concerning the ownership, lease, and use of said track, the court instructs you that the negligence of the employés of the receiver of the Colorado Midland Railway Company is imputable to the defendant, and that the defendant is accordingly responsible in law for said collision."

This instruction properly stated the law upon this subject. The plaintiff in error owed the defendants in error the duty of safe carriage. It had a direct responsibility to them. That responsibility and liability upon its part for damages, if any injuries occurred to them, it cannot avoid upon the ground that another company, to whom it had leased its road, was guilty of the negligence which caused the collision that resulted in the injuries complained of. This direct question was presented in Railroad Co. v. Barron, 5 Wall. 90, 104, 18 L. Ed. 591. The court, in considering it, said:

"It will be observed the defendants owned the road upon which they were running the car in which the deceased was a passenger at the time of the collision, and that the train in fault was running on the same road with their permission. The question is not whether the Michigan company is responsible, but whether the defendants, by giving to that company the privilege of using the road, have thereby, in the given case, relieved themselves from responsibility. The question has been settled, and we think rightly, in the courts of Illinois, holding the owner of the road liable. Railroad Co. v. McCarthy, 20 Ill. 385; Railroad Co. v. Dunbar, Id. 624; Railroad Co. v. Whipple, 22 Ill. 105. The same principle has been affirmed in other states. Nelson v. Railroad Co., 26 Vt. 717; McElroy v. Railroad Corp., 4 Cush. 400."

In Central Trust Co. of New York v. Colorado Midland Ry. Co. (C. C.) 89 Fed. 560, 564, the question presented to the court arose upon exceptions to the report of the master fixing the liability for losses growing out of a collision between the trains of the respective railroad companies. The accident which was the foundation of the litigation took place, as here, between New Castle and Rifle Creek, in Colorado, under conditions precisely the same as are presented in this case. The court in the course of its opinion stated that the Denver Company, as a carrier of passengers, would be rightfully and primarily held responsible to the passengers, on its train, for the injuries received in the collision. See, also, Railroad Co. v. Meech, 163 Ill. 305, 308, 45 N. E. 290; Railroad Co. v.

Phinazee, 93 Ga. 488, 21 S. E. 66; Bank v. Smith, 30 C. C. A. 133, 86 Fed. 398; Patterson v. Railway Co., 54 Mich. 91, 98, 19 N. W. 761; Kinney v. Railroad Co. (N. C.) 30 S. E. 313; Benton v. Same, Id. 333; Pierce v. Same, 32 S. E. 399, 402; Central Trust Co. v. Denver & R. G. R. Co., 38 C. C. A. 143, 97 Fed. 239, 242.

4. It is next claimed that the court erred.in charging the jury as follows:

"The only questions, therefore, which will require investigation at your hands, are: Was the plaintiff Katherine A. Roller injured by said collision? And, if she was so injured, what amount of damages will compensate for the injuries received? If the evidence fails to satisfy you that said plaintiff Katherine A. Roller was injured by said collision, your verdict will be for the defendant. If, however, you find from the evidence that said plaintiff Katherine A. Roller was injured by said collision, then your verdict will be for the plaintiffs, and, pursuant to the instructions hereinafter given, you will award such an amount of damages as will be a fair compensation for all the injuries so sustained by the said Katherine A. Roller. You are further instructed that, if great fright was a reasonable and natural consequence of the circumstances in which the collision aforesaid. with the ensuing wreckage, explosion, and conflagration, placed said plaintiff Katherine A. Roller, and that she was actually put in fright by those circumstances, and that injury to her health was a reasonable and natural consequence of such great fright, and was actually and proximately occasioned thereby, said injury is one for which damages are recoverable."

And, in connection with this part of the charge of the court, it is claimed that the court erred in refusing to give the following, among other, instructions asked for by the plaintiff in error:

"No damages can be given for fright or mental suffering resulting from mere risk or peril, where no actual injury has been sustained; nor for the results of mental or nervous disturbances, where no bodily harm is sustained."

The charge of the court must be construed with reference to the facts elicited at the trial. It will therefore be necessary, in relation to these, as well as other points to be hereafter discussed, to refer generally to such facts.

The passenger train of the plaintiff in error was composed of an engine, mail car, baggage car, smoking car, day coach, tourist sleeper, Pullman sleeper, and a special car. The defendants in error occupied a lower berth in the Pullman sleeper. They had retired. Mrs. Roller was clad in her nightdress when the collision occurred, near New Castle, but was not asleep. The collision occurred just before midnight, and the results were serious. The engines of the respective trains were thrown upon each other with great force. The front cars were telescoped. Immediately following the collision there was an explosion, caused by the gas with which the passenger trains were lighted. The portion of the train in front of the Pullman sleeper caught fire and was destroyed in the ensuing conflagration. The testimony of Mrs. Roller, detailing the facts, as they appeared to her at the time, and her previous and subsequent condition of health, is as follows:

"I was 27 years old last October. * * * I was married to Dr. Roller * * * the 9th of October, 1895. * * * Prior to the time of my marriage, * * * I cannot recall any sickness, except about 8 years ago I had the croup. I had no nervous trouble, and my mother had no nervous trouble, nor any member of the family. * * * My mother was not of a

nervous disposition. * * * When I left Palmer, the 1st of September, 1897, I weighed 135 pounds. I was in perfect health. * * * I was not fatigued with the journey at all. Felt no effects from the altitude. * * * I retired right away after we left Glenwood Springs. I had my nightdress and my stockings on. Dr. Roller occupied the same berth with me. We had not gone very far. I had not gotten asleep yet, when I was awakened with a terrible bump, and I was brought upright in my berth. My head was knocked onto my chest. Then my head fell back onto the board, and there was not anything there. The pillow that was there seemed to be down lower, on my back. * * * I could see from the window a great light, and fire. When we went to bed the curtains were down almost all the way. When we were awakened they were up quite a bit. I heard what sounded like what we hear on the Fourth of July,—a cannon explosion. It was very distinct. I heard a noise right outside of my berth. Somebody said, 'If we can get them out, all right; but I have my doubts about it.' Then the noise went from my berth further up the car, and said, 'Get out, everybody, before you burn up.' I got up and ran for the door. I did not dress. I took out a serge skirt. I did not put it on. * * * I went out the furthest door from the engine. When I got to the door the Pullman conductor passed me, and jumped out before me. I jumped out after him. * * * The conductor got out on the same side, and did not help me off. I jumped off down to the ditch, quite a little distance. The next thing that happened, the doctor was trying to help me up on the embankment; and when I got up on the embankment I saw a man with his flesh all falling off, and I saw another man lying on the ground. I saw some people bringing back some more. It was light, and up in front the engines and cars were burning. * * * There was another car behind ours, and I went back quite a distance further than that car. There I met General and Mrs. Weidner. It was not longer than five or ten minutes after I got up on the bank. My husband stayed with me all the time. While I was moving back, Dr. Roller went back to the car to get my clothes, and he helped to dress me. * * * Before I left the car, when my head was knocked up onto my chest, I had a severe pain in my back and the back of my head. After I got out of the car, and up on the embankment, I had great pain in my back, of the weight of my head. I have suffered a great deal of pain in the back of my head and neck and in my right side. I first felt it in my right side the morning after the accident. I was up there on the embankment for three-quarters of an hour. I remained there until the conductor told me to get into the car. * * * We remained in the car until we got back to New Castle. * * * During that day in New Castle there was a terrible itching sensation all over my body. It continued until some time in October, after the accident. It was the hives. I never had anything like it before. I never had any sensation of pain prior to the accident. These sensations of pain have not ceased. They have grown very much worse. * * * Since the accident I have had a great many spells of exhaustion. * * * Before I took this journey I never knew but that my memory was all right. Now, if I should read anything this afternoon, I could not remember very well to-night."

Upon all material facts testified to by her she was corroborated by the testimony of other witnesses. There were several passengers in the Pullman car, at the time of the collision, who testified at the trial that they did not hear any remarks made by the conductor about any difficulty of getting the passengers out, or any statement by anybody to hurry and get out before they burned up, or anything to that effect. Some of them stated that the conductor, in answer to inquiry as to what was the trouble, said, "I am going forward to find out," and that he soon returned, and stated in a loud tone of voice that: "Passengers will get out and dress. There is a wreck ahead, and the cars are on fire, but you will have plenty of time to get out." It is apparent from the entire testimony that the injury to Mrs. Roller was real, not feigned. It will be observed

that she did not testify that her injuries came from any fright. The injuries which she testified to were received from the effect of the collision while in her berth. Her testimony in this respect is uncontradicted. The character of the injuries she received was such as might not fully disclose the extent of them at once. She testified, however, she felt the pain in her head and neck. The next day she realized she had a pain in her right side. The truth is, as shown by the record, that she thereafter gradually declined in health, became nervous and subject to spells of exhaustion, and suffered great pain. In fact, it was admitted upon the oral argument that she had become a physical wreck, as compared with her general state of health previous to the injury. The sole contention of the plaintiff in error is that the instructions were erroneous, because the case was tried upon the theory that the injuries were the result of fright alone, and that there was no actual bodily injury, and that upon this point there was at least a conflict in the evidence. The record furnishes no facts to support this contention. It would have been error for the court, under the facts of this case, to have instructed the jury as requested by the plaintiff in error. The charge of the court, as given of its own motion, may be subject to criticism, but it is not erroneous. It will be noticed that the court, in its charge, said to the jury, "If the evidence fails to satisfy you that said plaintiff Katherine A. Roller was injured by said collision, your verdict will be for the defendant." Was not this explicit and clear? If there was no injury, that was the end of the case. In the briefs of counsel there is a lengthy discussion of the question whether fright or mental distress alone constitutes such an injury that the law will allow a recovery for it. This question is not involved in this case, and, for the purpose of this opinion, it may be conceded that any effect of a wrongful or negligent act which affects the mind alone, without injury to the body, will not furnish a ground of action. Whatever the rule in such cases may be, en passant, we apprehend that it will depend upon the particular facts in each case. There is no conflict in the authorities upon the question that when, by the negligence of the defendant's acts, the plaintiff receives a bodily injury, he is entitled to recover damages, not only for such injury, but for all the injurious results which are a reasonable and natural consequence thereof, and were actually and proximately occasioned thereby. We all know, by common knowledge, that serious results may naturally follow from bodily injuries, without breaking an arm, or leg, or bones of the body. The body and mind are so intimately connected that the mind is very often directly and necessarily affected by physical injuries. A nervous shock, without a blow to the person, might, under some circumstances, be so great as to cause bodily injury. In estimating the amount of damages which the defendants in error were entitled to recover, the jury had the right to take into consideration all the testimony as to the surrounding facts and circumstances at the time of, and incident to, the collision, including the position and situation in which Mrs. Roller was placed thereby, in order to arrive at the truth as to the extent of the bodily injuries she received, and the character and extent of the fright

or shock, if any, to her system, resulting from and directly attributable to the collision and injury. In a case like the present, the proximate damages which the person injured is entitled to recover are the ordinary and natural results of the collision and injury, and are such as might reasonably be expected would follow therefrom. This general principle, wherever discussed, is expressly recognized by all the authorities, which hold that damages cannot be recovered for mere fright alone, without any bodily injury. If there was any fright or shock which resulted from her bodily injury in connection with the collision, the accompanying explosion, fire, and wreckage of the cars, and the surrounding circumstances directly connected therewith and solely attributable thereto, there is no substantial reason why she should not be allowed to recover all damages naturally and reasonably and approximately arising therefrom. The instruction under consideration was substantially taken from the opinion in Bell v. Railroad Co., 26 Ir. Law R. 428, cited, reviewed, and held correct in Sedg. Meas. Dam. 640. In Traction Co. v. Lambertson, 59 N. J. Law, 297, 36 Atl. 100, it was expressly held that, where there is actual physical injury, damages resulting from the incidental fright may be recovered. In Warren v. Railroad Co., 163 Mass. 484, 487, 40 N. E. 895, the plaintiff, while attempting to drive a buggy over the track at a railroad crossing, was, by the carelessness and negligence of the gate keeper, shut in between the gates; and a passing train hit the buggy, and he was thrown out upon the ground. The trial court instructed the jury:

"If you should find that there was a tortious act on the part of the defendant, then you may take it into account, as part of the damage that the plaintiff is entitled to recover, if at all, for fright and mental suffering which he underwent, if he underwent any at all. It may be used to enhance damages,—fright caused by nervous shock."

Replying to the criticism of the term "tortious act," the court said:

"We think that the meaning of this phrase, in the connection in which it is used, is that if the defendant's train struck the carriage of the plaintiff, and he was thereby thrown out upon the ground, this would be a tortious act, if occasioned by the defendant's negligence, and that, if this act resulted in injury to the plaintiff, the defendant would be liable, if the plaintiff was in the exercise of due care, and that in estimating the damages the jury might take into account, not only the physical injury, but also the fright and nervous shock. This ruling, we think, was either correct, or sufficiently favorable to the defendant. It is a physical injury to the person to be thrown out of a wagon, or to be compelled to jump out, even although the harm done consists mainly of nervous shock."

In Railway Co. v. Kellogg, 94 U. S. 469, 474, 24 L. Ed. 256, the court said:

"The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place. 2 W. Bl. 892. The question always is, was there an unbroken connection between the wrongful act and the injury,—a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some

new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. * * * When there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it."

The following additional authorities sustain the views we have expressed, and support the conclusion above announced,—that the court did not err in its charge to the jury: Sloane v. Railway Co., 111 Cal. 668, 680, 44 Pac. 320, 32 L. R. A. 193; Purcell v. Railway. Co., 48 Minn. 134, 137, 50 N. W. 1034, 16 L. R. A. 203; Railway Co. v. Marchant, 28 C. C. A. 544, 84 Fed. 870, 872; Coy v. Gas Co. (Ind. Sup.) 46 N. E. 17, 20; Mack v. Railroad Co., 52 S. C. 323, 334, 29 S. E. 905, 40 L. R. A. 679, et seq.; Hamilton v. Railway Co., 17 Mont. 334, 347, 42 Pac. 860, 43 Pac. 713.

5. There are several other assignments of error that bear such a close relation to the last point as not to require any extended discussion, owing to the conclusions already reached:

(1) It is claimed that the court erred in the next portion of its charge, where, after informing the jury that exemplary or punitive damages could not be allowed, and that the damages, if any, which could be recovered, are compensatory damages,—such damages as would naturally flow directly from the injury, if any, occasioned to Mrs. Roller by said collision,—it added:

"These compensatory damages embrace all damages for bodily and mental pain and suffering which have resulted to said Katherine A. Roller from said injuries, and if said injuries are permanent, or she has not recovered from them, such damages, also, as you may find from the evidence it is fair to believe she will suffer from said injury in the future."

This part of the charge was unquestionably correct. It is, of course, to be considered with reference to the facts, and to the previous portions of the charge. In District of Columbia v. Woodbury, 136 U. S. 450, 459, 10 Sup. Ct. 993, 34 L. Ed. 475, the court, in discussing this question, said:

"The authorities all agree that in cases of this character much latitude must be given to juries in estimating the damages sustained by the person injured. Physical suffering resulting from such injuries is necessarily attended by mental suffering in a greater or less degree. And as said in Kennon v. Gilmer, 131 U. S. 22, 26, 27, 9 Sup. Ct. 697, 33 L. Ed. 112: 'The action is for an injury to the person of an intelligent being; and when the injury, whether caused by willfulness or negligence, produces mental as well as bodily anguish and suffering, it is impossible to exclude the mental suffering in estimating the extent of the personal injury for which compensation is to be awarded.' Railroad Co. v. Barron, 5 Wall. 90, 105, 18 L. Ed. 591; Canal Co. v. Graham, 63 Pa. St. 290; Smith v. Holcomb, 99 Mass. 552; Holyoke v. Railroad Co., 48 N. H. 541; Stockton v. Frey, 4 Gill, 406; Smith v. Overby, 30 Ga. 241; Cox v. Vanderkleed, 21 Ind. 164; Lynch v. Knight, 9 H. L. Cas. 577."

In Railroad Co. v. Harmon, 147 U. S. 571, 573, 584, 13 Sup. Ct. 558, 37 L. Ed. 286, the court held that the following instruction was correct:

"If the jury find for the plaintiff, they will find for him such an amount of damages as will fully compensate him for the suffering of mind and body in-

flicted upon him by his injury; for the personal inconvenience, the loss of time, and the expenses of cure that naturally and proximately resulted from the injury he suffered; and, if they find that the injuries sustained by the plaintiff are permanent, they will also find for him such damages as will fully compensate him for the suffering of mind and body, the personal inconvenience, and the loss of time that he will suffer in the future. In determining this as to the future, they will consider plaintiff's bodily vigor and age, as shown by the evidence adduced."

See, also, Koetter v. Railway Co. (Sup.) 13 N. Y. Supp. 459; Kenyon v. City of Mondovi, 98 Wis. 50, 54, 73 N. W. 314; Wilson v. Railroad Co., 132 Pa. St. 27, 33, 18 Atl. 1087; Saldana v. Railway Co. (C. C.) 43 Fed. 862, 867; Stutz v. Railway Co., 73 Wis. 147, 151, 40 N. W. 653; Railroad Co. v. Martin, 111 Ill. 220, 227; Railway Co. v. Taylor, 170 Ill. 49, 57, 48 N. E. 831; Cameron v. Trunk Line, 10 Wash. 507, 512, 39 Pac. 128; Hamilton v. Railway Co., 17 Mont. 352, 42 Pac. 860, and 43 Pac. 713.

(2) It is argued that the court erred in allowing Dr. Brill to state his opinion as to the cause of Mrs. Roller's condition, and to answer the hypothetical question propounded to him. The latter objection was also made to the testimony of other physicians. No witnesses were introduced by the plaintiff in error to disprove the testimony and opinions of these physicians as to the extent or cause of her injuries, nor were any amendments to the hypothetical question proposed; but the objections were made to the opinions given, and exceptions taken to their admission. Dr. Brill testified that he first met Mrs. Roller September 28, 1897; that since that time he had been her family physician; that she complained at that time of pain in the back of the head and neck, in the right side, and along the spine, and of the itching from the hives; that she was somewhat nervous in her appearance and bearing; that there was not at that time any external violence that he could discover at the back of the head or neck, but there was some tenderness along the spine and along the back of the neck; that he prescribed for her in the usual manner; that he saw her every few days; that about the 1st of January, 1898, she began to lose flesh and lost strength and became somewhat pale and anæmic, more nervous, and more timid and apprehensive; that her whole bearing was changed, her pulse became accelerated, ranging from 90 to 110 or 120, and that there was a slight elevation of temperature; that in the early part of the year 1898 these symptoms persisted, and became more and more noticeable; that by the last of May she had become quite emaciated, had lost a great deal of flesh, her memory was tardy and defective, and her mental action slow; that there were muscular cramps and twitching in the limbs and face; that she complained of being weak, of loss of strength, and being nervous, and of pain in the back of the head and neck, and over the right side of the body, and in the spine. He continued detailing her condition up to the time of the trial; showing, among other things, that her sense of pain had become greatly diminished over her entire body, and that at some points it seemed almost obliterated. At the close of his testimony the following questions were propounded to him, and answers given thereto:

"Q. From your examination that you have made of her, and assuming that her condition is as you have testified upon the stand, as observed by you,—from the examination that you have made,—are you, as a physician and surgeon, and from your experience as such, able to form an opinion as to what is the cause of her present condition? A. Yes; I am. Q. What is that cause? A. Her condition is the result of injury and shock of some sort."

(3) Thereafter a hypothetical question was propounded to Dr. Brill, substantially detailing at great length the condition of Mrs. Roller, as to her health previous to the collision and afterwards, as testified to by him and other witnesses, and of the fact of the collision and of all the circumstances connected therewith, substantially as testified to by Mrs. Roller, and other witnesses at the trial, and closing with the statement:

"Assuming these facts to be as I have stated them, and the woman as I have described her, from your experience as a physician and surgeon are you able to form an opinion as to the cause of her present condition? A. Yes, sir. Q. What is that opinion? * * * What would you say, then, was the cause of her present condition, assuming the facts as I have stated them? A. The injury and shock due to the accident described."

The court did not err in permitting Dr. Brill to give his opinion as to the cause of Mrs. Roller's condition. The rule is well settled that a medical expert may form and express an opinion of the nature and cause of the bodily or mental condition of his patient, —her ills, symptoms, pains, and suffering,—derived from his own knowledge, from his attendance, treatment, and examinations, although based in part upon her statements and complaints made at different times as to her pains and sufferings, and, in this connection, to give his opinion whether her injuries are liable to be permanent, and whether her present condition is due to or caused by sickness, injury, accident, or violence. McClain v. Railroad Co., 116 N. Y. 460, 468, 22 N. E. 1062; Railway Co. v. Wood, 113 Ind. 545, 553, 14 N. E. 572, and 16 N. E. 197; Turner v. City of Newburg, 109 N. Y. 301, 308, 16 N. E. 344; Johnson v. Railroad Co., 47 Minn. 430, 432, 50 N. W. 473; Courvoisier v. Raymond, 23 Colo. 113, 117, 47 Pac. 284; Railroad Co. v. Newell, 104 Ind. 264, 3 N. E. 836; Railroad Co. v. Spilker, 134 Ind. 381, 391, 33 N. E. 280, and 34 N. E. 218; McKeon v. Railway Co., 94 Wis. 477, 483, 69 N. W. 175, 35 L. R. A. 252; Bowen v. Railway Co., 89 Hun, 594, 597, 35 N. Y. Supp. 540; Perkins v. Railroad Co., 44 N. H. 223, 225; Jackson v. Burnham (Colo. Sup.) 39 Pac. 577, 578; Insurance Co. v. Mosley, 8 Wall. 397, 404, 19 L. Ed. 437; Railroad Co. v. Urlin, 158 U. S. 271, 275, 15 Sup. Ct. 840, 39 L. Ed. 977.

In Turner v. City of Newburg, supra, the court said:

"The questions addressed to the physicians, calling for their opinions as to whether the physical condition in which they found the plaintiff to be, upon their examination of her, could have resulted from a fall, were not objectionable, and infringed upon no rules of evidence. We see no objection to the expression of opinions by competent medical experts upon an ascertained physical condition of suffering or bad health, as to whether that condition might have been caused by, or be the result of, a previous injury."

In Railroad Co. v. Urlin, supra, the court said:

"As one of the principal questions in the case was whether the injuries of the defendant were of a permanent or of a temporary character, it was cer-

tainly competent to prove that during the two years which had elapsed between the happening of the accident and the trial there were several medical examinations into the condition of the plaintiff. Every one knows that when injuries are internal, and not obvious to visual inspection, the surgeon has to largely depend on the responses and exclamations of the patient when subjected to examination. 'Whenever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings, made at the time in question, are also original evidence. If they were the natural language of the affection, whether of body or mind, they furnish satisfactory evidence, and often the only proof of its existence, and whether they were real or feigned is for the jury to determine. So, also, the representations by a sick person of the nature, symptoms, and effects of the malady under which he is suffering at the time are original evidence. If made to a medical attendant, they are of greater weight as evidence; but, if made to any other person, they are not, on that account, rejected.' 1 Greenl. Ev. (14th Ed.) § 102."

(4) The objections urged to the hypothetical question propounded to Dr. Brill and to other physicians are wholly untenable. The principal contention is that in detailing the circumstances in regard to the collision, and of Mrs. Roller's subsequent condition, some of the facts were misstated, and others exaggerated and assumed, without any warrant in the evidence. Let us see upon what foundation this claim is made:

(a) The question, in stating the facts at the time of the collision, assumes that Mrs. Roller "was asleep," whereas her testimony was that she "had not gotten asleep yet," when she was awakened with a terrible bump, etc. What influence could such a trifling discrepancy possibly have in controlling the answers of the physicians or the judgment of the jurors? None whatever. What difference did it make whether she was at the time dozing, sound asleep, or fully awake?

(b) The next alleged misstatement and exaggeration is that there "was a series of shocks   *   *   * accompanied by explosions and loud detonations," whereas Mrs. Roller only testified that there was one explosion and detonation. Her words were that she "heard what sounded like what we hear on the Fourth of July,—a cannon explosion." But in framing the question the counsel is not to be confined to the testimony of Mrs. Roller, nor to the use of the exact and precise words of any witness. Its substance and true meaning need only be given.

Dr. Roller, in testifying upon the point under review, said:

"We had a head to head collision. We were thrown forward in our berths. We had one concussion, and immediately after that we had another."

Peter Weidner testified:

"We had a collision. I could not just tell what it was at the time it happened, but I found we had stopped very suddenly, and then drew back and had another concussion, and shook us up pretty well. Immediately after the collision there was a heavy explosion."

William C. St. Pierre, a passenger, called on behalf of the plaintiff, who was only affected slightly by the stopping of the train, testified:

"I noticed a sudden jar in the car, and then another one. I suppose the first jar was the application of air brakes. The next jar came immediately afterwards. A short while after that there was an explosion. I cannot tell

100 F.—48

how much time elapsed between the last jar and the explosion. It was some little time."

If the identical language used by these witnesses had been inserted in the question, it would have conveyed to the physicians and jury, in substance, the same meaning as the language inserted in the question. There was more than one concussion, more than one detonation. It is manifest that the change in the language used could not have had any greater influence with the physicians and jury than if the actual words used by the witnesses had been given.

(c) The other portions claimed to be objectionable are that:

"By the said collision she was thrown violently in the said berth, and against the head end of said berth, and the back of her head and back of her neck being impressed against the head end of said berth, and, in fear of her personal safety was compelled, in her nightdress, * * * to alight from said train in the nighttime, and * * * to descend into a deep trench * * * and ascend a steep embankment, and there to be exposed until her clothes would be brought to her, and there was exposed to her sight persons injured in said collision."

Counsel argue that the use of the words "violently" and "compelled" was absolutely erroneous and prejudicial, and wholly unwarranted by any evidence. In lieu of the word "violently," Mrs. Roller used the word "terrible," which, in its ordinary signification, means "frightful; adapted to excite terror; dreadful." It will be noticed that the word "compelled," as used, did not, and was not intended to, convey the idea that she was compelled by any command of the plaintiff in error or its agents to leave the train, but that she was compelled in fear of her personal safety. This is virtually what she testified to.

We have examined these questions for the purpose of showing that there was no substantial ground upon which to base any valid objection to the hypothetical question. The objections noticed are the most formidable made by counsel, and the others, being equally without merit, need not be noticed. In all that we have said, it must be distinctly understood that we do not deny the general proposition urged by counsel, but here expressly affirm the same,—that it would be reversible error to admit the answer of expert witnesses to hypothetical questions which assume the existence of facts upon which no evidence is offered. But when the question assumes the existence of any state of facts which the evidence directly, fairly, and reasonably tends to establish or justify, and does not transcend the range of evidence, it is proper to permit such questions to be answered, and it is not necessary that the questions shall embrace or cover all the facts in the case. Railway Co. v. Wood, 113 Ind. 545, 554, 14 N. E. 572, and 16 N. E. 197; Stearns v. Field, 90 N. Y. 640; Powers v. Kansas City, 56 Mo. App. 573, 577; Meeker v. Meeker, 74 Iowa, 352, 357, 37 N. W. 773; Bever v. Spangler, 93 Iowa, 576, 602, 61 N. W. 1072; Manatt v. Scott (Iowa) 76 N. W. 717, 720; Russ v. Railroad Co., 112 Mo. 45, 48, 20 S. W. 472, 18 L. R. A. 823; Fullerton v. Fordyce (Mo. Sup.) 44 S. W. 1053, 1056; Rog. Exp. Test. (2d Ed.) § 27; 8 Enc. Pl. & Prac. 757, 758, and authorities there cited.

6. It is with much vigor and earnestness argued that the court

erred in permitting witnesses to testify to what they saw and heard while upon the embankment after Mrs. Roller had left the car, and in failing to instruct the jury that there could be no recovery for any injuries resulting from what she there saw. The substance of this testimony was that Mrs. Roller and other passengers, when they got upon the embankment, saw the front end of the train burning; that the cars were telescoped and were burning fiercely; that they heard people hollering and cattle bellowing; that they heard the cracking of the fire; that wounded persons were brought near them, moaning and complaining, and women crying; that they remained upon the embankment about 30 minutes. The objections are that all this testimony was incompetent, irrelevant, and immaterial; that it did not tend to prove any of the issues raised by the pleadings; that it was not part of the res gestæ, and too remote. It is contended, among other things, that, inasmuch as Mrs. Roller did not testify to having been frightened or injured by anything she there saw or heard, it was error to allow any testimony as to what there occurred. The truth is that there was no direct evidence that she was frightened at the time of the collision, either while in her berth in the sleeper, at the sight of the conflagration, or the sound of the explosion, or at what she saw and heard after she left the car. Whether she received any fright or shock to her system was a matter of inference to be drawn by the jury from all the established facts, as well as from the opinion of the medical experts. The jury were not bound to accept such opinion unless they believed it was supported by the facts. The shock, if any, to her system, may have, for aught that appears from the testimony, been solely from the effects of the terrible bump she received while in her berth, or from some other cause, or by all combined. The reasons given, why the testimony as to what occurred on the embankment should have been excluded, would apply with equal force against any testimony as to the explosion, conflagration, or general wreckage; and, there being no positive testimony that she was frightened by the injuries she actually received while in her berth, it would appear that evidence as to that injury, to show a fright to her, would likewise, under the views contended for by counsel, be objectionable. But the reasoning of counsel is unsound. To enable the jury to determine the reasonableness of the question whether Mrs. Roller was frightened or received a shock from the collision, all the facts and circumstances connected therewith were admissible, because, in the very nature of the case, they were not divisible. Mrs. Roller was not guilty of contributory negligence in failing to close her ears and shut her eyes as to everything that transpired, resulting from the collision. She had the right to observe what was going on, to use her faculties of sight and hearing, and to exercise the ordinary speed of locomotion in seeking a place of safety, and in so doing to act at the time upon the facts as they appeared to her, regardless of the question as to whether her injuries would have been as great had she remained in the car, and taken time to fully dress before she departed therefrom. Purcell v. Railway Co., 48 Minn. 134, 138, 50 N. W. 1034, 16 L. R. A. 203; Twomley v. Railroad Co., 69 N. Y.

158, 160; Kleiber v. Railway Co., 107 Mo. 240, 247, 17 S. W. 946, 14 L. R. A. 613; Railway Co. v. Murray, 55 Ark. 248, 258, 18 S. W. 50, 16 L. R. A. 787; Stokes v. Saltonstall, 13 Pet. 181, 191, 10 L. Ed. 115. It will be observed from the record that the testimony of the witnesses as to what they saw and heard while upon the embankment did not relate to any declarations of any officer or agent of the plaintiff in error as to how the accident occurred, upon which it was sought to hold the railroad company liable, nor to a narration of past events, upon which points counsel have industriously cited a vast number of authorities, but related almost exclusively to the facts which actually transpired at the time; the same being a part of, and directly connected with, the collision and wreck. How could the jury arrive at the truth without taking the facts into consideration, with all the surrounding circumstances of the collision incident thereto and connected therewith? The defendants in error had the right, although the seriousness of the collision was not denied, to have the actual condition of affairs photographed by the sworn testimony of all the witnesses; and here we may appropriately digress, and, answering another assignment of error, add that it was not error, in addition thereto, to have the wreck, with all its surroundings, photographed by an artist, and, upon proof of their correctness, submit them to the jury. These photographs (three in number) fully illustrate the facts as testified to by the witnesses. Everything except the explosion and loud detonations is presented and truthfully delineated. The admission of such photographs is always allowed, when proven to be correct, for the purpose of enabling the witnesses to explain their testimony as to the facts, or to assist the jury in arriving at a better understanding of the testimony of the witnesses. 1 Whart. Ev. § 676; 1 Whart. Cr. Ev. § 544; People v. Durrant, 116 Cal. 179, 212, 48 Pac. 75; 11 Am. & Eng. Enc. Law (2d Ed.) 539, and authorities there cited. Returning from this digression, we are of opinion that the area of events covered by the term "res gestæ" depends upon the circumstances of each particular case. No general definition applicable to all cases could be fully and fairly given within the limits of an ordinary opinion. The centralized thought is that the term presupposes a main fact or a principal transaction, and the "res gestæ" means the circumstances and facts which grow out of the main fact, are contemporaneous with it, and serve to illustrate its character. Applying the term to the present case, with reference to the main collision as the principal fact, it necessarily follows that the immediate and surrounding circumstances interblended with and directly resulting therefrom are to be considered as a part of the accident and injury, and inseparably connected with it. 1 Whart. Ev. § 259; 1 Greenl. Ev. § 108; Carter v. Buchanan, 3 Ga. 513, 517; Hallahan v. Railroad Co., 102 N. Y. 194, 199, 6 N. E. 287; Railroad Co. v. Kennelly, 170 Ill. 508, 510, 48 N. E. 996; Insurance Co. v. Mosley, 8 Wall. 397, 408, 19 L. Ed. 437.

In Railroad Co. v. Kennelly, supra, the court said:

"The question before the jury was how or in what manner the plaintiff was injured, but we think it was competent, as a part of the res gestæ, to

show all that occurred, although in doing so it might appear that others were also injured. The injuries to others were a part and parcel of the same injury received by the plaintiff, and in describing the manner in which she was injured, the injuries received by the others being so closely connected, it would be almost impossible in an intelligent manner to give an account of one injury without at the same time disclosing the others."

In Railroad Co. v. Spilker, 134 Ind. 380, 393, 33 N. E. 280, and 34 N. E. 218, the appellee received injuries in a collision which occurred at a railroad crossing between the train of appellant and a wagon in which Mrs. Spilker, her husband, David Casey, and others were seated. Certain evidence was objected to because it assumed that Casey was killed by the same collision, and it was argued in support of this objection that this allusion to Casey's death was calculated to prejudice the jury in favor of the appellee. The undisputed fact was that Casey was killed at the time the wagon was demolished by the collision. Upon these facts the court said:

"His death was the principal circumstance connected with the accident, and we do not see how it was possible, even if proper, to keep the knowledge of this circumstance from the jury. One might almost as well object to making any remark concerning the demolition of the wagon. David Casey's death is mentioned by several of the witnesses. It was inseparably connected with the accident, and a reference to him and his death could hardly be avoided. But it was not necessary to avoid it."

With reference to the objection that the details of the collision as given by the witnesses, while upon the embankment, were not put in issue by the pleadings, but little need be added to what we have already said in discussing other questions. The complaint alleged that:

"Katherine A. Roller was by said collision, while she was in said passenger coach as aforesaid, violently and forcibly thrown down and against the sides, berths, seats, and partitions of such coach, and was in the nighttime, and at the place of said collision, forced to alight from said passenger coach, and was by means of the premises greatly bruised, wounded, and injured, and also, by means of the premises, she became and was sick, sore, lame, and disordered, and so remained and continued for a long space of time, to wit, from thence hitherto, during all of which time the said plaintiff suffered and underwent great bodily pain and mental anguish, and was for a long period confined to her bed, and was hindered and wholly unable to attend to the performance and transaction of her necessary duties and affairs, during all that time to be performed and transacted; and also, by means of the premises, the said plaintiff has been and will be permanently injured."

Under these allegations it was certainly competent, as we have before stated, to show any injury to her health which was the natural, probable, and reasonable result of the collision, and of her bodily injury received therefrom. This being true, it must follow that if, alarmed by the peril in which she was placed by the collision, but acting as a person of ordinary prudence would under like circumstances, she jumped from the car into a deep trench, and, in order to reach a place of safety, climbed up a steep embankment, and there saw the horrors incident to such a collision, and the fright or shock to her system, added to the injuries to her body, impaired her health, and was directly traceable to the collision, as its primary, proximate, and responsible cause, the damages resulting therefrom would be general, not special, and there-

fore need not have been specifically set forth in the complaint, because, in the eye of the law, there would not be any new or independent cause between the collision and the injuries. The obvious, probable, or natural effects of the injuries which Mrs. Roller received might be given in evidence under the general allegations of the complaint. It is only those damages which are not the probable or necessary result of the injury that are required to be specially alleged. The defendants in error were not required to set forth in their complaint all the physical injuries and mental suffer-. ings which Mrs. Roller sustained, or which might have resulted from or be aggravated by the negligent acts of the plaintiff in error; nor were they required to aver each and every specific act and thing which occurred at the time of the collision which might or did contribute to her injuries. If such injuries and such acts could reasonably be traced to the main act complained of, and are such as might and did naturally follow from the collision, and were incident thereto, they need not be specially averred. The claim made, that the plaintiff in error was not advised by any of the allegations in the complaint that any damages were or would be claimed for any injury, fright, or shock which occurred after she left the car, cannot be sustained. When the plaintiff in error was informed by the pleading generally as to the effects produced by the collision, it was bound to anticipate evidence as to the extent of her injuries, the origin or aggravation of which could be reasonably traced to the negligent act complained of. Ehrgott v. City of New York, 96 N. Y. 265, 277; City of Chicago v. McLean, 133 Ill. 149, 153, 24 N. E. 527; Montgomery v. Railway Co., 103 Mich. 47, 57, 61 N. W. 543, 29 L. R. A. 287; Snyder v. City of Albion (Mich.) 71 N. W. 475; Croco v. Railroad Co. (Utah) 54 Pac. 985; Railroad Co. v. Hecht, 115 Ind. 444, 17 N. E. 297; Railway Co. v. Harris, 122 U. S. 597, 608, 7 Sup. Ct. 1286, 30 L. Ed. 1146; Wade v. Leroy, 20 How. 34, 44, 15 L. Ed. 813; 5 Enc. Pl. & Prac. 746, 748, and authorities there cited.

In Smith v. Railway Co., 30 Minn. 169, 171, 14 N. W. 797, where the injuries to the plaintiff were received from a derailment of the cars of the defendant company, the facts were in some respects similar to the facts in the present case. The complaint did not allege anything about any fright, and did not specify any more of the details of the injury than is set forth in the complaint in this action. The court, with reference thereto, said:

"In the circumstances mentioned, the damages resulting directly and proximately to the person and health of plaintiff * * * from her fright and from her coming to the ground, whether by jumping or by any of the means before indicated, would be general, not special. 'General damages are such as the law implies or presumes to have accrued from the wrong complained of.' 1 Chit. Pl. (16th Am. Ed.) 515. They are frequently spoken of as necessarily resulting from the wrong. 1 Chit. Pl. (16th Am. Ed.) 439, 515, 516; 2 Greenl. Ev. § 254. This, however, does not mean, as defendant's counsel appears to argue, that general damages are such only as must, a priori, inevitably and always result from a given wrong. It is enough if, in the particular instance, they do in fact result from the wrong, directly and proximately, and without reference to the special character, condition, or circumstances of the person wronged. The law, then, as a matter of course, implies or presumes

them as the effect which in the particular instance necessarily results from the wrong."

7. Finally it is claimed that the court erred in refusing to give 40 instructions asked by the plaintiff in error. In Heating Co. v. O'Brien, 19 Ill. App. 231, 234, the court said:

"To launch such a mass of legal conundrums upon a court, which can never enlighten the jury, but are generally drawn with the real, if not avowed, purpose of getting error into the record, and entangling the court in some technical contradiction that may be used in a higher court, is a perversion of the law of instructing jurors. A few plain statements of the law governing the case would suffice. If the court in the hurry of trial did not sift this unreasonable number of instructions as carefully as appellant desired, we do not feel called upon to interfere, unless some palpable error has occurred, clearly affecting the justice of the case."

Specific exceptions were taken to each instruction refused. Several of them, relating to the duties and obligations of railroad companies to their passengers, were evidently prepared upon the theory that, because the Midland Company was alone to blame, the plaintiff in error was not guilty of any negligence, and could not be held liable. These were inapplicable to the facts in this case, and were properly refused. Some were drawn upon the theory that the jury had no right to consider anything that occurred after Mrs. Roller left the car. These have been sufficiently disposed of by the views expressed with reference to the admission of the testimony. Others assert the broad principle that Mrs. Roller ought to have remained in the car, or at least should have avoided the sights upon the embankment, by returning to the car or going elsewhere, where the effects of the wreck would not have been observed. Such a narrow and limited view of the case cannot be sustained. The instructions asked, covering the measure of damages that could or could not be recovered, may, for the purpose of this opinion, be conceded to be correct and applicable to this case. The objections urged to their exclusion are based upon the criticism of counsel directed to the charge of the court,—that it was not full, did not contain the necessary limitations and qualifications, and of itself did not cover the different views that might properly be taken of the case. Our examination of the charge has failed to convince us of the soundness of these objections. In drafting or orally giving a charge to a jury, terseness, accuracy of statement, clearness of expression, and care in covering all essential particulars are commendable qualities. They furnish safe guides for all nisi prius judges to follow. But absolute perfection is not required. It would indeed be difficult, if not impossible, to so frame a charge as to prevent criticism by the eagle eye of vigilant and learned counsel, or even of the appellate court, with the opportunity afforded it of mature and deliberate consideration. Substantial accuracy of the legal principles is all that the law requires. If the charge of the court in its entirety fairly covers the legal propositions necessary to give instructions upon, and is substantially correct, it is not erroneous for the court to refuse the instructions prepared by counsel, although they contain correct principles of law applicable to the case. This, in substance, has

been so often declared, especially by the national courts, as to render it unnecessary to cite authorities in its support. We cannot, however, refrain from quoting with approval what is said upon this subject in 11 Enc. Pl. & Prac. 288:

"Instructions on points which have been sufficiently covered by other instructions may properly be refused, although they are correctly drawn and applicable to the evidence. This is so whether the instruction requested is covered by the general charge, or by special instructions granted at the request of either party, or whether the mode of expression is the same or different. The duty of the court is fully discharged if the instructions embrace all the points of the law arising in the case, in the court's own language. Indeed, the practice of taking the instructions requested, and formulating a general charge to the jury, embracing all the matters of law arising upon the pleadings and the evidence, has been specially commended. In this way the law is sufficiently declared and clearly presented to the jury, without the unnecessary repetition and verbose language which so often mars special instructions, whereby jurors are confused and confounded, rather than instructed and directed. Of course, such action requires great labor, thought, and prudence on the part of the trial judge, in order that the substance of all special instructions shall be given to the jury when the questions therein presented are pertinent to the case, and that no omission shall occur by which either of the parties may be prejudiced. But, if the trial judge is willing to undertake the additional labor, the jury, as a rule, will be better instructed in their duty than by hearing read the special instructions asked for on the part of the plaintiff and the defendant. The court should simplify its directions to the jury, and make every effort to render them as free from complexity as possible. * * * The reason for this is obvious. Repetition tends to incumber the record and to confuse and embarrass the minds of the jury, and it is also liable to give undue prominence to the proposition repeated."

A careful examination of the record in this case has brought us to the conclusion that no prejudicial error is shown therein. The judgment of the circuit court is affirmed, with costs.