## STEWART v. HEISLER et al.

District Court, N. D. Iowa, Central Division.
May 6, 1929.

No. 330.

W. C. Shepard, of Allison, Iowa, and Senneff, Bliss, Witwer & Senneff, of Mason City, Iowa, for plaintiff.

Brown, Fitch & West, of Omaha, Neb., for defendants.

SCOTT, District Judge. Plaintiff, as trustee for Beaver Valley State Bank of Parkersburg, Iowa, brought this action at law against the defendants Lewis A. Heisler and Nebraska Tire & Rubber Company, in the district court of Iowa for Butler county, to recover a sum of money upon a promissory note executed by Nebraska Tire & Rubber Company to Lewis A. Heisler, and by the payee indorsed and transferred to Beaver Valley State Bank of Parkersburg. Nebraska Tire & Rubber Company is a corporation organized under the laws of Nebraska, with its principal place of business in the city of Omaha in that state. Service of the original notice in the action was made upon said corporate defendant by serving in regular form upon its president and secretary in the city of Council Bluffs, Iowa. Nebraska Tire & Rubber Company filed a timely petition for removal of the case to the District Court of the United States for the Northern District of Iowa, upon the ground of separable controversy, and in due course said cause was removed. Thereupon Nebraska Tire & Rubber Company, through counsel, entered a special appearance for the purpose of attacking the jurisdiction of the court, and moved to quash the service of the original notice, which under the Iowa practice is equivalent to summons, and as grounds therefor alleged under the oaths of its president and secretary that said defendant was a corporation organized under the laws of Nebraska, and had been doing business in that state continuously for 10 years; that the nature of its business was the manufacture of automobile tires and accessories, with its factory located in the city of Omaha, Neb.; that it never had any place of business in the state of Iowa, nor any agent authorized to act for it in the transaction of business in that state, and never had done or transacted any business in that state; that it had filed no copy of its articles of incorporation in the state of Iowa, nor sought to receive any permit to do business in that state; that on the day of the service of original notice upon its president and secretary, said officers were not in the state of Iowa transacting any business for defendant, but were present as individuals in Council Bluffs in said state, as the guests of one Malloney, who had invited them to luncheon; that said pretended service was

520

fraudulent for the reason that neither said defendant nor its officers were at the time in the state of Iowa doing business on behalf of said corporation, but were enticed and inveigled to come from the state of Nebraska to the state of Iowa on the invitation of said Malloney to dine, when the real purpose of said invitation was to furnish opportunity to serve the corporate defendant with notice of suit.

Issue was joined upon the allegations of said motion to quash service, and testimony was taken, and the matter fully argued and submitted.

Upon the subject of fraudulent service, while there are many facts and circumstances calculated to arouse suspicion, a full examination of the testimony leads me to conclude that the defendant corporation has not sustained the issue by a sufficient degree of proof. I therefore pass directly to the question of the sufficiency of the service, and the involved question whether at the time of the service the corporate defendant was doing business within the state of Iowa in the sense required to subject it to service of process.

The defendant is a Nebraska corporation, doing a manufacturing and jobbing business at Omaha. Defendant manufactures and sells automobile tires, and has been doing so for a considerable number of years. Defendant has never been authorized to do business in the state of Iowa or complied with the foreign corporation laws of that state. Back of 1925, defendant manufactured and sold its tires generally to the trade throughout quite a large territory, and had one or two traveling salesmen in Western Iowa territory. These salesmen solicited the sales of tires and either transmitted or brought in their orders to the home office at Omaha. About 1925, the defendant company adopted a new policy of business, viz., that of obtaining contracts and manufacturing tires for jobbers or wholesalers or other manufacturers, making the tires in the molds and under the private brand of such wholesaler or other manufacturer. Business under the new policy progressed, until in 1928 the defendant company was devoting about 80 per cent. of its capacity to the private brand tires, and 20 per cent. to the general manufacture and merchandising of tires on their own account, practically all of which capacity was disposed of in the city of Omaha. In 1928, or immediately following, the defendant company withdrew or ceased to employ their traveling men in the state of Iowa, and since that time have had neither agents nor agencies in that state. The testimony shows, however, that defendant

company has a retail branch store or shop in Omaha, operating under a trade-name of the Nebraska Tire Sales Company; that this branch shop gives tire service and sells tires at retail in Omaha, and employs a service man who drives about delivering tires in Omaha and presumably installing them on automobiles, and selling tires if opportunity presents in the course of his activities. The testimony shows that occasionally old customers in the state of Iowa still send in by mail orders for tires, which are filled in the usual course of interstate traffic. The testimony further shows that customers in Council Bluffs, Iowa, which is immediately across the Missouri river and practically joins Omaha, go over to Omaha occasionally and buy tires at the retail store, and that the service man employed by the defendant's retail branch shop since 1925 has occasionally gone over to Council Bluffs and delivered a tire or tires, and that while there on a few occasions called on old customers and asked if they wanted any tires. But the evidence discloses no sales made by him on such occasions. Had it done so, he would simply have taken the order and turned it in for approval and execution.

After 1925, defendant's executive officers, knowing that there existed at Shenandoah, Iowa, two large mail order department houses that maintain radio broadcasting stations, went to Shenandoah for the purpose and with the hopes of interesting those merchants, entering into arrangements with them to manufacture their special brand of tires. Two different trips were made to Shenandoah for this purpose, but nothing came of it. The Shenandoah merchants neither appeared to take much interest, and no headway seems to have been made toward establishing any relations. The effort did not seem to have left open any negotiations, and there was no existing or continuing character or element to the action upon the part of the defendant.

In the summer of 1928, a party residing in Council Bluffs named Malloney called at defendant's place of business in Omaha, and interviews were had looking to future business relations. It seems that Malloney and a friend residing in Chicago, Ill., were interested in the so-called developing of a considerable tract of land in Mississippi; that one of the principal national highways traverses this tract of land; that Malloney had conceived the idea of opening an oil station and tire and automobile accessory shop at a point on this highway on the land in Mississippi. His interview was with a view to have defendant furnish him tires for his contem-

plated Mississippi shop. No definite proposition or arrangements were arrived at, Malloney stating that his partner in Chicago would have to be consulted and participate in any arrangements made. One day in September, 1928, Malloney, at Council Bluffs, called defendant's officers at Omaha, advising that his partner was coming from Chicago the next morning, that they would like to meet defendant's officers and discuss their project. Defendant's president suggested that they come over to Omaha, but Malloney said he had no car, and would not defendant's officers come over to Council Bluffs and have lunch with him the next day and talk the matter over with the partner. Defendant's officers acceded to this suggestion. The next day, however, Malloney's partner did not arrive, but Malloney did not advise defendant of this nonarrival. Consequently, at noontime defendant's president and secretary took their automobile and drove over the river bridge to Council Bluffs, met Malloney at the Chieftan Hotel, and there learned that the partner had not arrived, but Malloney took them in to lunch. Probably the project was again discussed, but the purpose of the visit to Council Bluffs to meet the partner was fruitless, and nothing was accomplished by the trip. Had the partner arrived, the plan was for the parties to discuss the subject of the defendant corporation from its Omaha factory furnishing Malloney and his partner at their Mississippi shop, tires. No Iowa business of any character was under consideration. The anticipated interview was entirely preliminary, hoping for future arrangements, which however, were never discussed or considered after that day. After the luncheon defendant's officers left the hotel, and when they had proceeded a few yards on the sidewalk, were halted and served with notice of suit by one Townley, a private detective employed by plaintiff some months before to obtain service of the original notice on the defendant corporation within the state of Iowa.

It is upon the foregoing facts as I find them that the plaintiff is attempting to maintain the validity of his service. Counsel for both plaintiff and defendant have argued the question on briefs and orally with unusual ability and thoroughness.

Plaintiff's counsel in their brief have set forth a list of cases said to be "the leading cases, all from courts of last resort of great respectability." And it is urged that these cases fairly exemplify the rule applicable in the instant case. We will examine these cases seriatim.

Commercial Mutual Accident Co. v. Davis, 213 U. S. 245, 29 S. Ct. 445, 53 L. Ed. 782. The suit was brought by Mary B. Davis, plaintiff, a citizen and resident of Missouri, in the circuit court of Howard county, Mo., and was removed to the Circuit Court of the United States for the Central Division of the Western District of Missouri by defendant, a Pennsylvania corporation. Defendant made no appearance, was not generally doing business in Missouri, and had no office or agency there. The suit was on an accident policy to recover for the death of plaintiff's husband. Upon notice of death, defendant questioned its liability, but sent one Dr. Mason to Fayette, Mo., with full authority to investigate and settle the claim, or decline to settle as he might determine. The doctor having declined to settle, he was served with summons. The Supreme Court held that the state court and United States Circuit Court had jurisdiction; that the functions performed by Dr. Mason in the state of Missouri were corporate functions; and that he represented the corporation in that state at the time.

Fond du Lac Cheese & Butter Co. v. Henningsen Produce Co., 141 Wis. 70, 123 N. W. 640, was a case brought by plaintiff, a Wisconsin corporation, against defendant, a Montana corporation, not engaged in business in Wisconsin, for damages on account of the consignment of butter. Summons was made upon A. P. Henningsen, secretary and manager of defendant, at Fond du Lac, Wis. Judgment was entered by default. Defendant thereafter appeared specially and moved with supporting papers to set aside the judgment for the reason that no jurisdiction was acquired over the person of defendant. Affidavit of plaintiff, showing that at the moment of service Henningsen was in Wisconsin for the purpose of adjusting and settling the very controversy. The court denied the motion, defendant appealed, and the Supreme Court of Wisconsin affirmed the order.

Atkinson v. United States Operating Co., 129 Minn. 232, 152 N. W. 410, L. R. A. 1916E, 241, was an action by Atkinson against United States Operating Company on account of misrepresentations on sales of shares of the defendant's corporate stock by its agent in Minnesota. Defendant was a Maine corporation, with place of business in Chicago, Ill., and with its president residing at Minneapolis, Minn. Defendant's business was the handling of the agency business of a life insurance company which did no business in Minnesota. Suit was brought in the

district court of Houston county, Minn., summons served on the president in that state, and defendant moved to get aside the service. The motion was denied, and defendant appealed. The court found: That the president conducted some necessary correspondence from his home in Minneapolis, and from time to time signed papers, the nature of which did not appear. That the other business transacted in the state related to the sale by the defendant of its own stock. That it had three different agents in the state engaged in the business of selling its stock, one for a period of seven months and up to a short time before the commencement of the action. It was this agent who negotiated the sale to the plaintiff and made the representations relied upon. That these sales of stock were in no sense preliminary to defendant's organization or the commencement of its business, but occurred long after the corporation was a going concern. When plaintiff and others whose claims were assigned to plaintiff concluded to rescind their subscription contracts, their attorney mailed their demand for rescission to the president at Minneapolis. In response thereto the secretary and general manager of the company came from Chicago to Minnesota to negotiate for settlement of the demands of these parties. Numerous other controversies arose out of contracts for sale of stock in Minnesota, and on several occasions the secretary came to Minnesota to negotiate settlements, both before and after the time of the summons in this action, and made several settlements of such disputes. The court held that this was a doing of business in the state of Minnesota sufficient to subject the defendant to service of summons, and on appeal the order was affirmed.

Hagerty v. National Fur & Tanning Co., 137 Minn. 119, 162 N. W. 1068, was an action in the district court of Martin county, Minnesota, by Mary Hagerty, a citizen and resident of Minnesota, against defendant, a Nebraska corporation. Service of summons was made upon one Krueger, a traveling salesman of defendant, employed to travel in the state of Minnesota and solicit orders for new garments and garments to be repaired, subject to acceptance by defendant. Defendant had no branch house or distributing point in Minnesota, and had not appointed any agent for acceptance of process there. Plaintiff's showing was to the effect that a traveling salesman of defendant came to plaintiff's residence at Fairmont, Minn., and solicited work; that she gave him an otter coat for repair; and that he took it with him and gave

her a receipt which included a contract insuring her against loss; that later defendant returned the coat by express; that the work was poorly done, and plaintiff sent the coat back and refused to pay for the repair. A considerable correspondence followed, and later the coat was brought to plaintiff's residence by Krueger, who attempted to settle with her, offering to exchange the coat for another garment which he brought with him. Thereupon summons was served upon Krueger. The court held the defendant present in Minnesota doing business, and on appeal the order was affirmed.

In Green v. Chicago, Burlington & Quincy Railway Co., 205 U. S. 530, 27 S. Ct. 595, 51 L. Ed. 916, plaintiff in error, also plaintiff below, a citizen of Pennsylvania, brought action in the Circuit Court of the United States for the Eastern District of Pennsylvania (147 F. 767) to recover damages for personal injuries incurred in Colorado through the negligence of the defendant, an Iowa corporation, having no lines and operating no trackage or other property in the state of Pennsylvania. Service was made on one Heller, agent of the defendant, located in Philadelphia, Pa., whose duty was to solicit freight and passenger traffic in other parts of the country than those through which defendant's tracks ran. Defendant maintained an office for Heller in Philadelphia, and designated him as district freight and passenger agent, and advertised these facts. He sold no tickets and received no payments for transportation of freight. When a prospective passenger desired a ticket, and applied to the agent for one, the agent took the applicant's money and procured from one of the railroads running west from Philadelphia a ticket for Chicago and a prepaid order, which gave to the applicant, upon his arrival at Chicago, the right to receive from the defendant a ticket over that road. The Supreme Court said: "It is obvious that the defendant was doing there a considerable business of a certain kind, although there was no carriage of freight or passengers. In support of his contention that the defendant was doing business within the district in such a sense that it was liable to service there, the plaintiff cites Denver, etc., Railroad Co. v. Roller [C. C. A.] 100 F. 738 [49 L. R. A. 77] and Tuchband v. Chicago, etc., Railroad 115 N. Y. 437 [22 N. E. 360]. The facts in those cases were similar to those in the present case. But in both cases the action was brought in the state courts, and the question was of the interpretation of a state statute and the jurisdiction of the state courts.

"The business shown in this case was in substance nothing more than that of solicitation. Without undertaking to formulate any general rule defining what transactions will constitute 'doing business' in the sense that liability to service is incurred, we think that this is not enough to bring the defendant within the district so that process can be served upon it."

This case is relied upon by the defendant in the instant case as an authority in its favor. Plaintiff's counsel, however, urge that this case is distinguishable in that it was first brought in the federal court, and that that distinction was recognized by the Supreme Court of the United States when citing Denver & R. G. Railroad Co. v. Roller, and Tuchband v. Chicago & A. R. Railroad, supra. In the light of subsequent decisions of the Supreme Court, I cannot conclude that that distinction was alone the controlling one. The court stressed the fact that the only business done in Pennsylvania by the corporation's agent was to solicit business; and in International Harvester Co. v. Kentucky, 234 U. S. 579, 586, 34 S. Ct. 944, 946 (58 L. Ed. 1479) the court, referring to the Green Case, said: "We have no desire to depart from that decision, which, however, was an extreme case. There the Railway Company, carrying on no business in Pennsylvania, other than that hereinafter mentioned, and having its organization and tracks in another state, was sought to be held liable in the Circuit Court of the United States for the Eastern District of Pennsylvania by service upon one Heller, who was described as an agent of the corporation. As incidental and collateral to its business proper the company solicited freight and passenger traffic in other parts of the country than those through which its tracks ran. For that purpose it employed Heller, who had an office in Philadelphia, where he was known as district freight and passenger agent, to procure passengers and freight to be transported over the company's line. He had clerks and traveling passenger and freight agents who reported to him. He sold no tickets and received no payment for the transportation of freight, but took the money of those desiring to purchase tickets and procured from one of the railroads running west from Philadelphia a ticket for Chicago and a prepaid order which gave the holder the right to receive from the company in Chicago a ticket over its road. Occasionally he sold to railroad employés, who already had tickets over intermediate lines, orders for reduced rates over the company's line. In some cases, for the convenience of shippers who had received bills of lading from the initial line for goods routed over the company's line, he exchanged bills of lading over its line, which were not in force until the freight had been actually received by the company. Summarizing these facts, Mr. Justice Moody, speaking for the court, said (page 533 of 205 U. S. [27 S. Ct. 596]): 'The business shown in this case was in substance nothing more than that of solicitation. Without undertaking to formulate any general rule defining what transactions will constitute "doing business" in the sense that liability to service is incurred, we think that this is not enough to bring the defendant within the district so that process can be served upon it.' "

It would seem from the foregoing language that the Supreme Court in the Green Case merely undertook to establish the rule that mere solicitation of traffic by a railroad company in a state other than that in which it had tracks and did business proper, was insufficient to constitute such doing of business as would render it liable to service of process and suit in the courts of such state. This conclusion has support in the language of the Supreme Court in the case of Minnesota Commercial Men's Association v. Benn, 261 U. S. 140, 145, 43 S. Ct. 293, 295 (67 L. Ed. 573) in which the court said:

"Considering what this court held in Green v. Chicago, Burlington & Quincy Ry. Co., 205 U. S. 531 [27 S. Ct. 595, 51 L. Ed. 916]; Philadelphia & Reading Ry. Co. v. McKibbin, 243 U. S. 264 [37 S. Ct. 280, 61 L. Ed. 710]; People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79 [38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537]; and Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U. S. 516 [43 S. Ct. 170, 67 L. Ed. 372], we think it cannot be said that the association was doing business in Montana merely because one or more members, without authority to obligate it, solicited new members."

Denver & R. G. R. Co. v. Roller, 100 F. 738, 49 L. R. A. 77 (9 C. C. A.), was an action wherein Roller, a citizen and resident of California, sued the railroad company, a Colorado corporation, in the superior court of Los Angeles county, Cal., for personal injuries on account of a collision occurring in the state of Colorado, the defendant having no lines in the state of California, and summons being served upon one Shotwell, an agent of the plaintiff in error at San Francisco, Cal., authorized to solicit and contract for passengers and freight to be carried from the state of California over other lines, and then over the railroad of the plaintiff in error

in the state of Colorado, and the soliciting and contracting for passengers and freight to be carried from eastern points through the state of Colorado to the state of California. The case was removed to the proper federal court and motion made to quash the summons, and, the motion being denied, the case was taken to the Circuit Court of Appeals for the Ninth Circuit on error assigned. That court pointed out that the plaintiff in error had an office in the city of San Francisco, upon the windows of which appeared its name with the words, "Freight and Passenger Office." It distributed folders advertising Shotwell as its agent at a certain number on California street, San Francisco. Judge Hawley, speaking for the court, said:

"It thus clearly appears that the plaintiff in error had a business office in the city of San Francisco, state of California, and a managing agent in charge of that office, for the purpose of soliciting business in transporting passengers and freight over its road, situated in the state of Colorado."

It will be further noticed that in the Roller Case the agent not only had authority to solicit but to contract for the railroad corporation. It seems to me this power, unquestionably a corporate function, distinguishes the Roller Case from the Green Case. It was held in the Roller Case that the railroad had subjected itself to service in California.

I have carefully examined the foregoing authorities, as well as many others cited in the briefs of respective counsel, and have arrived at the conclusion that the defendant corporation was not at the time of the service in question doing business in the state of Iowa in the sense required to subject it to the service of process. The corporate defendant's motion will therefore be sustained, and the service quashed, and it is so ordered.

To all of which the plaintiff duly excepts.